BOOCHEVER, Circuit Judge:
 

 The district court affirmed a bankruptcy court decision holding that the Chinichians filed a Chapter 13 Reorganization Plan in bad faith and that the plan must therefore be rejected. The Chinichians appeal and we affirm the district court.
 

 I. FACTS
 

 Khalil and Shahin Chinichian (the Chinic-hians) and Attilio Campolongo entered into a contract in January, 1980, for the sale of the Chinichian house. The Chinichians later attempted to rescind the contract; Cam-polongo cancelled escrow and sued in state court for specific performance.
 

 Shortly before the specific performance trial the Chinichians filed a Chapter 11 petition moving to reject the contract with Campolongo. The bankruptcy court denied the motion and the Chinichians converted their case into a Chapter 13 bankruptcy. The Chinichians failed to appear at the Chapter 13, section 341(a) meeting of creditors and the Chapter 13 trustee dismissed the case. The Chinichians moved for reconsideration arguing that they had received insufficient notice. The bankruptcy court, however, denied their motion.
 

 Following the dismissal, Campolongo filed a Motion to Reset his specific performance case on the State Court Calendar. The state court granted the motion but on August 10, 1983, the eve of the specific performance trial, the Chinichians filed a second Chapter 13 petition which again took the trial in state court off calendar.
 

 The Chinichians filed a plan of reorganization in which they elected to reject the contract with Campolongo. The creditors scheduled were: (1) the holder of a first trust deed for approximately $40,000 on the Chinichians’ home, the payments on which were current; (2) the Campolongo claim listed as disputed, unliquidated, amount unknown, and the subject of litigation; and (3) a debt owed to Mr. Chinichian’s brother, a resident of Iran, estimated at $40,000. The primary assets listed were the Chinic-hians’ home, valued at $140,000, subject to the above-mentioned trust deed and four parcels of vacant, undeveloped desert acreage valued at approximately $20,000, owned free and clear of liens. The plan proposed to sell the acreage within six months and pay the proceeds to the trustee. The bankruptcy court confirmed only part of the plan of reorganization; it refused to reject the Campolongo contract. The court orally revised the plan to exclude the contract and confirmed the modified plan pending later ruling on rejection of the contract.
 

 The Chinichians moved for reconsideration of the provision withholding approval of rejecting the contract. Upon hearing the motion, the court revoked its original order and reconsidered the plan
 
 in toto,
 
 including the contract. The court issued a memorandum opinion on March 12, 1984, holding that the Chinichians filed their Chapter 13 reorganization plan in bad faith and that the plan therefore must be rejected. The bankruptcy court explained:
 

 
 *1442
 
 If the debtors’ plan is confirmed and the executory contract rejected, then the plaintiff in the specific performance lawsuit will become an unsecured creditor, and his position as unsecured creditor will be subordinate to the homestead exemption rights of the debtors. Absent rejection of the executory contract the right of the contract purchaser to specific performance is superior to the debtors’ homestead rights.
 

 The Chinichians appealed to the United States District Court for the Central District of California which affirmed the bankruptcy court’s memorandum opinion. The district court explained: “[tjhere would be no debt if appellants had performed under the contract. Appellants are simply attempting to keep their home. This is not a proper use of the Code.”
 

 II. ANALYSIS
 

 A. A BANKRUPTCY COURT CAN REVOKE AN ORDER WHICH ONLY PARTIALLY CONFIRMS A REORGANIZATION PLAN BASED ON A DEBTOR’S LACK OF GOOD FAITH.
 

 In reviewing the Chinichians’ reorganization plan, the bankruptcy court specifically left for later determination its decision on the Campolongo contract and confirmed only a modified plan absent the contract. The bankruptcy court thus revised orally the plan and confirmed it “pending later ruling on the proposal to reject the land sale contract.”
 

 The district court concluded that the bankruptcy court should not have deferred decision on the contract but should have ruled on the plan
 
 in toto.
 
 Nonetheless, the district court characterized the bankruptcy court’s action as “partially confirm[ing]” the Chinichians’ plan.
 

 Regardless of whether we review the district court’s decision that the bankruptcy court’s action constituted a partial confirmation as a question of law or one of fact, we conclude that it was not error for the district court to find that the plan was only partially confirmed.
 

 The Chinichians present three arguments why the bankruptcy court does not have power to revoke an order partially confirming their reorganization plan: (1) the bankruptcy court lacked jurisdiction because under 11 U.S.C. § 1330 (1982) no party in interest requested such relief and no evidence was presented of fraud; (2) the Chin-ichians were denied due process because they were not given notice and opportunity to be heard on the subject of good faith; and (3) the bankruptcy court was prevented from revoking its order because the issue was res judicata. All three arguments lack merit.
 

 With regard to the Chinichians’ first argument, the Chinichians argue that 11 U.S.C. § 1330(a) allows revocation of an order “[o]n request of a party in interest ... and after notice and a hearing, ... if such order was procured by fraud.” Because no party' in interest requested revocation and the Chinichians were not provided with notice or an opportunity for a hearing, the Chinichians assert that the bankruptcy court did not have power to revoke its order.
 

 The Chinichians, however, are mistaken first in asserting that the bankruptcy court relied on section 1330 to revoke its order, and second, in believing that section 1330 is the only method for revoking an order. The bankruptcy court did not refer to section 1330 and the district court cited 11 U.S.C. § 105 (Supp. II 1984) as granting the bankruptcy court power to revoke its order. Section 105(a) states:
 

 The [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.
 

 11 U.S.C. § 105(a) (Supp. II 1984). Because section 1325(a)(3) of Title 11 requires the Chinichians to propose their plan in good faith, the bankruptcy court has jurisdiction to revoke a plan if the plan was not filed in good faith. 11 U.S.C. § 1325(a)(3) (1982 & Sypp. II 1984).
 

 The Chinichians argue, however, that because section 1330 is a specific statute it
 
 *1443
 
 should govern the more general section 105.
 
 Morton v. Mancari,
 
 417 U.S. 535, 550-51, 94 S.Ct. 2474, 2482-83, 41 L.Ed.2d 290 (1974)., The
 
 Mancari
 
 rationale that a specific statute cannot be nullified by a more general one is only applicable where a conflict exists.
 
 See id.
 

 Section 1330 provides a method of revoking a confirmation order “[o]n request of a party in interest.” While it does not specifically authorize such a revocation by the court sua sponte, it does not prohibit such action. Section 105 constitutes authority for the court to issue any order necessary to carry out the provisions of the Code. That reservoir of power in no manner conflicts with the authority to act upon the request of an interested party, but constitutes a supplemental method of revocation in the event of fraud. It would be absurd to hold that the bankruptcy court is powerless to correct a fraud unless first requested by an interested party, and that is not what section 1330 provides.
 

 Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.
 
 See Frasch v. Wilson,
 
 413 F.2d 69, 72 (9th Cir.1969) (referee in bankruptcy has jurisdiction to reconsider order in case still pending before him where no intervening rights are involved, even if there has been failure to petition district court for review of order);
 
 In re Lionel Corp.,
 
 722 F.2d 1063, 1069 (2d Cir.1983) (bankruptcy judge must have substantial freedom to tailor his orders to meet differing circumstances);
 
 In the Matter of Lintz West Side Lumber, Inc.,
 
 655 F.2d 786, 789 (7th Cir.1981) (bankruptcy judge retains power to exercise discretion to reconsider order in light of trustees’ facts and arguments);
 
 In re Meter Maid Industries, Inc.,
 
 462 F.2d 436, 439 (5th Cir.1972) (apart from judicial review of an order by referee, referee has power to reconsider his order).
 

 Further, a bankruptcy court is a court of equity. As a court of equity, it-may look through form to the substance of a transaction and devise new remedies where those at law are inadequate.
 
 In re Global Western Development Corp.,
 
 759 F.2d 724, 727 (9th Cir.1985);
 
 In re Huntington Ltd.,
 
 654 F.2d 578, 589-90 (9th Cir.1981) (bankruptcy courts are courts of equity). Further, it can modify or vacate its order so long as no intervening right has become vested in reliance thereon.
 
 Commercial Credit Corp. v. Skutt,
 
 341 F.2d 177, 181 (8th Cir.1965);
 
 Castañer v. Mora,
 
 234 F.2d 710, 714 (1st Cir.1956) (referee in bankruptcy can reconsider, amend, or vacate an order). Thus, the bankruptcy court had equitable power to revoke its order partially confirming the Chinichians’ plan once it recognized the Chinichians did not file their plan in good faith as required by section 1325(a)(3).
 

 The Chinichians’ second argument is that the bankruptcy court did not have power to revoke its order because the Chinichians were not given an opportunity to be heard on the subject of whether their plan was filed in good faith, i.e., they were denied due process. The Chinichians assert that the only subject matter of their motion for reconsideration was their right to reject the Campolongo contract. The court, however, revoked sua sponte the entire confirmation order without any notice or hearing. The Chinichians assert that 11 U.S.C. § 1330 guarantees them notice and an opportunity to be heard.
 

 The Chinichians are mistaken for three reasons. First, the bankruptcy court did not revoke its order for fraud pursuant to section 1330, but instead for lack of good faith pursuant to section 1325. That section provides that the bankruptcy court shall confirm a plan if “the plan has been proposed in good faith_” 11 U.S.C. § 1325(a)(3). Therefore, the requirements of section 1330 are not applicable.
 

 Second, although the Chinichians’ argument that they have a due process right to a second notice and opportunity to be heard is appealing, the Chinichians clearly had that opportunity in their original November 15, 1983 hearing held to confirm their plan. For a court to confirm a plan, each of the requirements of section 1325 must be
 
 *1444
 
 present and the debtor has the burden of proving that each element has been met.
 
 In re Elkind,
 
 11 B.R. 473, 476 (Bankr.D.Colo.1981). Good faith is one of the required elements. Thus, in the first hearing the Chinichians were on notice that they had to establish good faith. As the district court explained:
 

 Though the court deferred decision on the executory contract and did not discuss the issue of the existence of good faith on the proposed plan until March, 1984, debtors cannot now argue that they never had an opportunity to argue good faith.
 

 Third, the Chinichians’ motion for reconsideration reveals that the order confirming their plan was not in fact final; the issue of the Campolongo contract was left to be determined in the future and in moving to reconsider, the Chinichians based their motion on the entire record:
 

 on this Notice of Motion, upon the Declarations of Khalil and Shahin Chinichian, the Memorandum of Points and Authorities in support thereof attached to this notice, and upon the pleadings, records and files herein, as well as oral testimony given at the time of the hearing and any other matters of which this court may take judicial notice.
 

 Pursuant to a motion from the Chinichians, the judge was given the opportunity to review the entire record and he found that the Chinichians had failed to meet their burden of showing that their plan was filed in good faith. No new evidence against the Chinichians was presented. The Chinichi-ans were thus not denied the opportunity to be heard.
 

 Finally, the Chinichians argue that the confirmation order was final and that res judicata precludes the bankruptcy court from redetermining whether the Chinichi-ans filed their plan in good faith. The Chinichians fail on this argument because the order was clearly not final. The Chinic-hians’ own Motion for Reconsideration indicates that the rejection of the contract was an issue to be determined at a future date. The bankruptcy court found that the plan was confirmed “pending later ruling on the proposal to reject” the contract and the district court found that the bankruptcy court had only partially confirmed the plan. Further, because the plan originally filed included the contract and the bankruptcy court had not ruled on the contract, res judicata cannot bar the bankruptcy court’s later determination that the plan as originally filed with the contract was filed in bad faith. The Chinichians thus fail on their third argument and we affirm the bankruptcy court’s power to revoke a plan which it had only partially confirmed or which it confirmed expressly “pending later ruling.”
 

 B. THE RECORD CONTAINS SUFFICIENT EVIDENCE TO SUPPORT A FINDING THAT THE PLAN WAS NOT FILED IN GOOD FAITH.
 

 Title 11 U.S.C. § 1325(a)(3) provides that the bankruptcy court shall confirm a plan if “the plan has been proposed in good faith and not by any means forbidden by law.” The statute and its legislative history do not define good faith.
 
 See
 
 H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 412, 430 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 126, 142 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5912, 5928, 5963, 6368, 6385.
 

 A good faith test, however, should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13.
 
 See
 
 H.R.Rep. No. 96-1195, Comm, on the Judiciary, 96th Cong., 2d Sess. 24-25 (1980) (discussing proposed amendments to § 1325(a)(3) to require good faith effort of the debtor to pay his debts, in addition to the requirement of good faith). We addressed the issue of good faith in
 
 In re Goeb,
 
 675 F.2d 1386 (9th Cir.1982). Without compiling a list of all relevant considerations, we concluded:
 

 Given the nature of bankruptcy courts and the absence of congressional intent to specially define “good faith,” we believe that the proper inquiry is whether the Goebs acted equitably in proposing
 
 *1445
 
 their Chapter 13 plan. A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner. Though it may consider the substantiality of the proposed repayment, the court must make its good-faith determination in the light of
 
 all
 
 militating factors.
 

 Id,
 
 at 1390 (emphasis in original) (footnote omitted).
 

 The Chinichians, however, assert the bankruptcy court judge did not in fact rely on these factors but simply sought to circumvent his lack of discretion to reject the executory contract once the plan was confirmed. Once a plan is confirmed, the bankruptcy judge may not refuse to permit rejection of any executory contracts rejected in that plan.
 
 In re Alexander,
 
 670 F.2d 885, 888-89 (9th Cir.1982). The bankruptcy court’s separate approval of that rejection is unnecessary.
 
 Id. Alexander
 
 does not prohibit the bankruptcy court from refusing to approve a plan it finds to be submitted in bad faith regardless of whether the plan rejects an executory contract. Thus,
 
 Alexander
 
 has no bearing on this case, in which the Chinichians’ plan was never totally confirmed and the bankruptcy court found that the plan was submitted in bad faith.
 

 After reviewing the Chinichian plan
 
 in toto,
 
 the bankruptcy judge concluded that the real purpose of the plan was to defeat the state court litigation and that such purpose violated the “spirit of the chapter”:
 

 The debtors in this case are not the poor, the oppressed and the unfortunate seeking a fresh start. They own a home valued at $140,000 which is encumbered for $40,000 and upon which the payments are current. They also own four parcels of desert acreage free and clear. They are not having difficulty in meeting their financial obligations. Instead, their purpose in-filing [sic] this Chapter 13 ease is solely to defeat the pending action for specific performance.
 

 The findings of the bankruptcy court are amply supported by the record. The record reveals: (1) the listing of only two unsecured creditors; (2) the unlikelihood that the brother who was listed as one of the unsecured creditors was even a creditor in light of the lack of payments to the brother in over two years and the absence of any fiduciary duty under which the brother could recover; (3) the failure of the brother to file a claim and the possibility that he was never noticed properly of the bankruptcy proceeding; (4) the lack of a meaningful provision in the plan to sell the desert properties; (5) the speculative nature of Campolongo’s unsecured claim for damages in light of the bankruptcy court’s finding that Campolongo was primarily interested in specific performance on the ex-ecutory contract, not damages; and (6) the filing of Chapter 13 for the purpose of defeating the Campolongo specific performance action. Thus, the bankruptcy court considered the totality of the plan as prescribed by
 
 In re Goeb,
 
 675 F.2d at 1390. While the Chinichians dispute the lack of good faith indicated by each of the individual factors which the bankruptcy court relied on, the court properly found that, taken together, these factors revealed bad faith.
 

 The district court took notice of further factors indicating bad faith: the strategic timing of the Chinichians’ bankruptcy petitions, which effectively frustrated enforcement of the contract in state court and the Chinichians’ change of their bankruptcy petition to Chapter 13 when their motion to reject the contract was denied in the Chapter 11 proceeding. The district court added:
 

 [T]here is a substantial question whether debtors were attempting to discharge a
 
 debt
 
 at all. Appellants have consistently argued that under certain California precedent, appellants’ liability for appel-lee’s loan on their property could all but wipe out debtors’ equity in their residence. Appellee is concerned with specific performance. There would be no debt if appellants had performed under the contract. Appellants are simply at
 
 *1446
 
 tempting to keep their home. This is not a proper use of the Code.
 

 Thus, the bankruptcy court considered the totality of the plan during the Chinichi-ans’ motion for reconsideration and concluded the Chinichians did not file their plan in good faith. Further, the district court found that the strategic timing of the bankruptcy petition and the nature of the plan itself supports a finding that the Chin-ichians failed to file their plan in good faith. Because the record clearly supports the bankruptcy court’s findings of fact, we hold that the court did not err in finding that the Chinichians did not file their plan in good faith.
 

 CONCLUSION
 

 We find that the bankruptcy court’s order only partially confirmed the Chinichi-ans’ plan pending a later ruling on the contract and that the bankruptcy court was therefore empowered to consider whether the Chinichians filed their plan in good faith. Further, sufficient evidence exists in the record to support the bankruptcy court’s finding that the Chinichians did not file their plan in good faith. The district court decision is therefore
 

 AFFIRMED.