170 F.3d 923
 Bankr. L. Rep. P 77,920, 22 Employee Benefits Cas. 2649,
99 Cal. Daily Op. Serv. 1918,
1999 Daily Journal D.A.R. 2457
In re Fred LOWENSCHUSS, Debtor.
Fred Lowenschuss, individually and in all capacities, Appellant,
and
Sun International North America, Inc., Intervenor-Appellant,
v.
Beverly Selnick, Appellee.
In re Fred Lowenschuss, Debtor.
Fred Lowenschuss, Appellant,
v.
Beverly Selnick, Appellee.
 Nos. 96-17213, 97-16506.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 6, 1998.
Submission Deferred Oct. 9, 1998.
Resubmitted March 10, 1999.
Decided March 17, 1999.
 
 Robin L. Filion, Baker & McKenzie, San Francisco, California, for the appellant.
 Mitchell A. Karlan and Leslie E. Moore, Gibson, Dunn & Crutcher, New York, New York, for the intervenor-appellant.
 Joseph S. Kistler, Gordon & Silver, Ltd., Las Vegas, Nevada, for the appellee.
 Appeals from the United States District Court for the District of Nevada; Edward C. Reed, Jr., District Judge, Presiding. D.C. Nos. CV-95-00714-ECR, CV-93-00778-ECR.
 Before: SNEED, HALL, and RYMER, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Fred Lowenschuss ("Debtor") appeals the district court's orders: (1) affirming the bankruptcy court's order granting Beverly Selnick's ("Selnick") motion for leave to seek a QDRO in the Pennsylvania courts; (2) vacating the bankruptcy court's ruling that the Pennsylvania divorce court awarded Selnick a money judgment in Debtor's beneficial interest in the Fred Lowenschuss & Associates at Law Pension Plan (the "Pension Plan"); and (3) vacating the bankruptcy court's order confirming Debtor's proposed plan of reorganization. Sun International, Inc.[1] ("Sun") has intervened in that part of the appeal addressing the district court's order vacating the bankruptcy court's money judgment ruling. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm each of the district court's orders.
 
 BACKGROUND
 
 2
 On September 28, 1981, Selnick filed for divorce in the Pennsylvania courts. Almost ten years later, in July 1991, a Pennsylvania divorce court entered an order (the "Divorce Decree") for the equitable distribution of the marital property of Debtor and Selnick. The Divorce Decree awarded Selnick, inter alia, 38.7% of Debtor's interest in the Pension Plan. The divorce court ordered Debtor to transfer to Selnick the full value of her 38.7% share directly from the Pension Plan. One month later, instead of transferring to Selnick her share of the Pension Plan assets, Debtor transferred over $8 million in Pension Plan assets out of Pennsylvania to avoid the jurisdiction of the Pennsylvania courts. Debtor followed his assets out of Pennsylvania, relocating in Nevada where, on August 24, 1992, he filed a Chapter 11 bankruptcy petition.[2] On his bankruptcy petition, Debtor listed as excluded from the bankruptcy estate his beneficial interest in the Pension Plan as an ERISA qualified plan under 11 U.S.C. § 541(c)(2) and Patterson v. Shumate, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). In the alternative, Debtor claimed that his beneficial interest in the Pension Plan was exempt from the bankruptcy estate under 11 U.S.C. § 522(b).
 
 
 3
 In deciding the composition of Debtor's bankruptcy estate, the bankruptcy court determined that the Pension Plan was "ERISA qualified," and therefore excluded from the bankruptcy estate Debtor's beneficial interest in the Pension Plan (the "Exclusion Order"). Selnick appealed the Exclusion Order. Debtor then submitted to the bankruptcy court a proposed plan of reorganization. During the plan confirmation hearing, the bankruptcy court ruled that the Divorce Decree had awarded Selnick a money judgment against Debtor, and not a property interest in the Pension Plan. While Selnick's appeal of the Exclusion Order was still pending, the bankruptcy court confirmed Debtor's plan of reorganization (the "Confirmation Order"). Selnick appealed both the money judgment ruling and the Confirmation Order.
 
 
 4
 On appeal, the district court vacated the Exclusion Order, and remanded the case to the bankruptcy court to hear additional testimony on the exclusion issue. In addition, the district court ordered the bankruptcy court to grant Selnick leave to seek a Qualified Domestic Relations Order ("QDRO") in the Pennsylvania courts. Pending resolution of the exclusion issue, the district court stayed Selnick's appeal of the money judgment ruling and the Confirmation Order, and issued a related minute order declaring that the plan of reorganization could not be confirmed until the exclusion issue had been resolved. Debtor immediately appealed, but the Ninth Circuit dismissed the appeal for lack of jurisdiction.
 
 
 5
 On remand, the bankruptcy court granted Selnick's motion for leave to petition the Pennsylvania courts for a QDRO. Debtor appealed the QDRO order, and the district court affirmed. Debtor now appeals the district court's order affirming the bankruptcy court's QDRO order.
 
 
 6
 In addition, the bankruptcy court determined that the Pension Plan was not ERISA qualified, and that therefore Debtor's beneficial interest in the Pension Plan could not be excluded from Debtor's bankruptcy estate. Having resolved the exclusion issue, the bankruptcy court determined that Debtor's beneficial interest in the Pension Plan was not exempt from the bankruptcy estate under Nevada law.[3]
 
 
 7
 Following resolution of the exclusion and exemption issues, the district court lifted the stay on Selnick's appeal of the Confirmation Order. The district court then vacated both the money judgment ruling and the Confirmation Order, and remanded the case to the bankruptcy court. Debtor appealed the district court's order, and Sun intervened in the appeal of that part of the district court's order vacating the money judgment ruling.
 
 DISCUSSION
 I. QDRO ORDER
 
 8
 Debtor contends that the bankruptcy court erred by granting Selnick's motion to lift the automatic stay to allow Selnick to petition the Pennsylvania courts for a QDRO. We disagree.
 
 
 9
 We will reverse the QDRO order only if the bankruptcy court abused its discretion. In re Conejo Enters., Inc., 96 F.3d 346, 351 (9th Cir.1996). The bankruptcy court did not abuse its discretion because Selnick showed more than adequate cause for relief from the automatic stay in her motion to petition the Pennsylvania courts for a QDRO.[4] See 11 U.S.C. § 362(d)(1); Conejo, 96 F.3d at 352 (requiring bankruptcy court to grant relief from automatic stay for cause).
 
 
 10
 Debtor listed on his bankruptcy petition as excluded under 11 U.S.C. § 541(c)(2) and Patterson v. Shumate, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), his beneficial interest in the Pension Plan. The Supreme Court decided in Patterson that a debtor's interest in a pension plan could be excluded from the debtor's bankruptcy estate if the pension plan contained a transfer restriction that was enforceable under ERISA. See 504 U.S. at 758-60, 112 S.Ct. 2242. Because Patterson was decided in June 1992, almost one year after the Divorce Decree was entered and just two months before Debtor filed his petition, the QDRO issue did not become important until Debtor's bankruptcy. Therefore, the bankruptcy court did not abuse its discretion when it granted Selnick's motion to lift the automatic stay to allow her to return to the Pennsylvania courts to seek a QDRO. Neither Debtor, Selnick, nor the Pennsylvania divorce court could have known during the divorce proceeding that the QDRO issue would be important in the future.[5] Nor could the divorce court have anticipated that Debtor would transfer all of his assets out of Pennsylvania and flee the jurisdiction of the Pennsylvania courts.
 
 
 11
 Debtor contends that the bankruptcy court granted Selnick's motion for a QDRO only because the district court ordered it do so, and that the bankruptcy court failed to find the requisite cause to lift the automatic stay. Debtor is incorrect. The bankruptcy court stated in its order that it had read and considered Selnick's motion, Debtor's opposition, and all of the papers and pleadings filed with the court, and that it had considered the argument of counsel. The bankruptcy court stated that, based upon this information, it was entering its order for good cause shown.
 
 
 12
 Debtor also contends that the Confirmation Order ousted the bankruptcy court of jurisdiction to lift the automatic stay to allow Selnick to seek a QDRO in the Pennsylvania courts. Debtor's argument is without merit because the district court effectively stayed the Confirmation Order pending resolution of the exclusion and exemption issues. Where, as here, an asset worth over sixty percent of approximately $8 million[6]-Debtor's beneficial interest in the Pension Plan on the petition date-has been erroneously excluded from the bankruptcy estate, the plan cannot be confirmed. See In re Chinichian, 784 F.2d 1440, 1444 (9th Cir.1986). Therefore, the bankruptcy court had jurisdiction to grant Selnick's motion.
 
 
 13
 Debtor also contends that the bankruptcy court violated his right to due process by granting Selnick's motion without a meaningful hearing. After a careful review of the record, we find Debtor's argument to be without merit. Debtor had numerous opportunities to be heard on this issue, filed a lengthy opposition to Selnick's motion, and appeared at the hearing on Selnick's motion.
 
 
 14
 Finally, Debtor contends that the QDRO order was barred by principles of res judicata. Res judicata prevents relitigation in a subsequent action of a claim based on a cause of action that has already been settled by a final judgment. See Montana, 440 U.S. at 153, 99 S.Ct. 970. In this case, the issue of whether the Pension Plan was ERISA qualified was never litigated during the divorce proceedings because Debtor testified during those proceedings that he was the sole participant in the Pension Plan, which would have prevented the Pension Plan from being ERISA qualified. Therefore, the district court's order granting Selnick's motion for a QDRO is not a subsequent action that relitigates an issue already decided in a previous action. Instead, the QDRO Order merely allows the Pennsylvania divorce court to modify the Divorce Decree in light of Debtor's new position in these bankruptcy proceedings. Therefore, Debtor's res judicata argument is without merit.
 
 II. MONEY JUDGMENT RULING
 
 15
 Debtor and Sun contend that the district court erred by reversing the bankruptcy court's ruling that the Pennsylvania divorce court awarded Selnick a money judgment against Debtor. We disagree.
 
 
 16
 The bankruptcy court's interpretation of the Divorce Decree is a question of law, cf. SEC v. United Fin. Group, Inc., 576 F.2d 217, 222 (9th Cir.1978) (citation omitted), which we review de novo. See In re Claremont Acquisition Corp., 113 F.3d 1029, 1031 (9th Cir.1997). Property interests are created and defined by state law. Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Upon careful review of the record and of relevant Pennsylvania law, we conclude that the bankruptcy court erred by ruling that Selnick held only a money judgment against Debtor.
 
 
 17
 In the Pennsylvania divorce proceedings, the divorce court ordered the equitable distribution of the marital property under the immediate offset method. Under the immediate offset method, "the non-pension-holding spouse receives an immediate distribution of marital assets." Elhajj v. Elhajj, 413 Pa.Super. 578, 605 A.2d 1268, 1269 (1992). Thus, Pennsylvania law frames the equitable distribution of a pension plan under the immediate offset method as the immediate and actual distribution of the pension plan assets, and not merely as the award of a money judgment against a debtor's interest in those assets. See id.; Lyons v. Lyons, 401 Pa.Super. 271, 585 A.2d 42, 46-47 (1991) (requiring "an actual present distribution of [non-pension-holding spouse's] share of the pension"); Zollars v. Zollars, 397 Pa.Super. 204, 579 A.2d 1328, 1330 (1990) (requiring distribution of marital property assets).
 
 
 18
 The divorce court's intent to award Selnick a property interest in the Pension Plan assets is further demonstrated by its explicit instruction that Debtor pay Selnick her 38.7% share of the Pension Plan directly from the Pension Plan assets instead of some other source. In addition, the divorce court's intent is clear from its entry of judgment in Selnick's favor and against both Debtor and the Pension Plan instead of only Debtor.[7] Based on the foregoing, we find that the bankruptcy court erred in ruling that Selnick held only a money judgment against Debtor. Instead, the Divorce Decree awarded Selnick an outright ownership interest in the Pension Plan assets.
 
 
 19
 Because Selnick owns outright 38.7% of the Pension Plan assets, her interest in those assets is not subject to discharge in Debtor's bankruptcy. Selnick's interest in the Pension Plan was established under Pennsylvania law at the time of the Divorce Decree. See In re Gendreau, 122 F.3d 815, 818 (9th Cir.1997). As we stated in Gendreau, "Bankruptcy recognizes state property rights, and filing bankruptcy cannot give a debtor a greater interest in an asset than that which he owned pre-bankruptcy." Id. at 819. Because Debtor filed his bankruptcy petition after Selnick's ownership interest in the Pension Plan was created, Selnick's interest in the Pension Plan is not a "debt" under the Bankruptcy Code, and therefore cannot be discharged in Debtor's bankruptcy. See id. at 818-19. Instead, Selnick's ownership interest in the Pension Plan assets is separate from Debtor's bankruptcy proceedings.
 
 
 20
 This case is distinguishable from In re Teichman, 774 F.2d 1395 (9th Cir.1985), upon which Debtor relies. In Teichman, we determined that a debtor's past-due obligations to pay to his former spouse a certain percentage of each periodic distribution the debtor received from his military pension plan were debts dischargeable in bankruptcy. See id. at 1397. In Teichman, the divorce court was unable to order the United States Air Force to pay directly to the debtor's former spouse her share of the periodic pension plan distributions. Id. at 1398. Instead, the court ordered the debtor to pay his former spouse her share of each distribution when he received it. Id. The debtor received some of the expected distributions prior to the petition date, but did not pay his former spouse her share. Because the Pension Plan was not burdened by the divorce court's order, we held that the debtor's obligations to his former spouse that arose prior to the petition date were debts that were dischargeable in bankruptcy. See id. at 1396. In contrast, the divorce court in Selnick's case was able to, and in fact did, order the distribution to be made to Selnick directly from the Pension Plan. Therefore, Teichman does not control the outcome of this case; instead, Gendreau controls our decision.
 
 
 21
 In Gendreau, the divorce court awarded the debtor's former spouse an ownership interest in the debtor's pension plan, and ordered the debtor's pension plan to make payments to the debtor's former spouse. See Gendreau, 122 F.3d at 817. We held that the debtor's former spouse owned a percentage of the debtor's interest in the pension plan, and that the interest was not a "debt" dischargeable in the debtor's bankruptcy. See id. at 818-19. Similarly, in Selnick's case, the divorce court ordered Debtor to pay Selnick directly from the Pension Plan her 38.7% interest in the Pension Plan assets. In addition, after Debtor transferred the Pension Plan assets out of Pennsylvania to avoid the jurisdiction of that state's courts, the divorce court entered judgment in Selnick's favor and against both Debtor and the Pension Plan.[8] Therefore, as in Gendreau, Selnick holds a direct interest in the Pension Plan itself, and not just a right to receive payment from Debtor. See id. at 818-19. Consequently, Selnick's ownership interest is not a debt dischargeable in Debtor's bankruptcy.
 
 
 22
 Debtor and Sun contend that the divorce court awarded Selnick a money judgment and not a property interest because the divorce court awarded Selnick 38.7% of the "value of" Debtor's interest in the Pension Plan. However, the immediate offset method used by the divorce court to divide the marital property required the divorce court to value the marital assets. See Lyons, 585 A.2d at 46-47 (immediate offset method "requires a calculation of the present value of the pension benefits"); Zollars, 579 A.2d at 1330 (immediate offset method reduces "all marital property to a present value" prior to distribution). Therefore, the divorce court's use of the word "value" in its equitable distribution order is consistent with the award of an ownership interest in the Pension Plan assets.
 
 
 23
 Debtor contends that any property interest the Divorce Decree may have created in favor of Selnick was extinguished when the divorce court entered a later judgment in favor of Selnick. We disagree.
 
 
 24
 In March 1993, after Debtor had transferred the Pension Plan assets out of Pennsylvania, the divorce court entered a $5.3 million judgment in Selnick's favor and against both Debtor and the Pension Plan. That judgment was merely an alternative method that Debtor forced the divorce court into using so that Selnick would have a chance to recover the assets with which Debtor had absconded. See 23 Pa.C.S.A. § 3502(e)(1) (permitting court to enter judgment "in addition to any other remedy"). Because neither the assets nor Debtor were within the Pennsylvania court's jurisdiction, the divorce court had no other option than to give Selnick a judgment that she could attempt to execute in the various states into which Debtor had transferred the Pension Plan assets. Therefore, the divorce court's entry of judgment against both Debtor and the Pension Plan did not extinguish Selnick's property interest in the Pension Plan assets. For these reasons, Debtor's reliance on Kessler v. Old Guard Mut. Ins. Co., 391 Pa.Super. 175, 570 A.2d 569, 573 (1990), is misplaced.
 
 
 25
 Debtor and Sun rely on Boggs v. Boggs, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997), to contend that Selnick cannot hold a property interest in the Pension Plan because the divorce court did not issue Selnick a QDRO. This argument is without merit because the Pension Plan was not an ERISA-qualified plan on the petition date.[9] Therefore, Boggs does not apply.
 
 
 26
 Sun contends that the money judgment finding was not properly before the district court because the bankruptcy court failed to make the necessary findings of fact for the district court to review, and that therefore the district court impermissibly considered the issue. We disagree because, as stated above, the interpretation of the Divorce Decree is a question of law, not of fact. Cf. United Financial Group, 576 F.2d at 222. Therefore, the cases on which Sun relies are distinguishable because in each of those cases the bankruptcy court had either made no factual findings or ambiguous factual findings, requiring remand to the bankruptcy court. See 550 West Ina Road Trust v. Tucker, 989 F.2d 328, 330 (9th Cir.1993) (good faith); Great Western Bank v. Sierra Woods Group, 953 F.2d 1174, 1176 (9th Cir.1992) (fairness); Oaks of Woodlake Phase III, Ltd. v. Hall, Bayoutree Assocs., 939 F.2d 802, 804-05 (9th Cir.1991) (bad faith). In the present case, there was no similar need to remand this case to the bankruptcy court because the district court was faced with a question of law, not fact.
 
 
 27
 Sun also contends that it was deprived of notice that the district court would consider the property interest issue because "the narrow issue of the existence, nature, and extent of Selnick's rights was not contemplated in the broader issue of the confirmation order appeal." We disagree because Selnick's notice of appeal stated that she was appealing the bankruptcy court's ruling that she "did not have an ownership interest in marital assets pursuant to the equitable distribution made at the time of the divorce of the parties." The notice of appeal was therefore sufficient to put Sun on notice that the money judgment ruling would be considered with the Confirmation Order appeal.
 
 
 28
 Finally, Sun asks us to decide whether Selnick's property interest in the Pension Plan assets is subject to Sun's direct claim against the Pension Plan. Sun won a judgment against the Pension Plan in the United States Bankruptcy Court for the District of New Jersey, but that judgment was reversed on appeal by the United States District Court for the District of New Jersey. Although Sun has appealed the district court's reversal of that judgment to the Third Circuit, that appeal has not yet been decided. Because Sun's claim against the Pension Plan is contingent on the outcome of this undecided appeal, we decline to reach this issue as it is not yet ripe for review. See Poland v. Stewart, 117 F.3d 1094, 1104 (9th Cir.1997) ("An issue is not ripe for review where the existence of the dispute itself hangs on future contingencies that may or may not occur."); Clinton v. Acequia, Inc., 94 F.3d 568, 572 (9th Cir.1996) ("[A] federal court ought not resolve issues involv[ing] contingent future events that may not occur as anticipated, or indeed may not occur at all.").
 
 III. CONFIRMATION ORDER
 
 29
 Debtor contends that the district court erred by vacating the Confirmation Order. We review de novo the district court's order vacating the Confirmation Order. See In re Carolina Triangle Ltd. Partnership, 166 B.R. 411, 414 (9th Cir. BAP 1994). Upon careful review, we find no error.
 
 
 30
 The bankruptcy court has broad powers under the Bankruptcy Code to vacate a confirmation order. See 11 U.S.C. § 105; cf. Chinichian, 784 F.2d 1440. As discussed above, when the bankruptcy court erroneously excluded from Debtor's bankruptcy estate Debtor's valuable interest in the Pension Plan, the plan could not have been confirmed.[10] Cf. Chinichian, 784 F.2d at 1444. Therefore, the district court properly vacated the Confirmation Order.[11]
 
 
 31
 Debtor contends that the Confirmation Order should be affirmed because the plan is fair and reasonable to Selnick. Debtor's argument is without merit. First, regardless of whether the plan was fair and reasonable to Selnick, the erroneous exclusion from the bankruptcy estate of over sixty percent of an $8 million asset made plan confirmation impossible. See id. Second, now that Debtor's beneficial interest in the Pension Plan is part of the bankruptcy estate, Selnick stands to receive a greater percentage of her claim against the estate than she would have received under Debtor's proposed plan, which understated its resources by millions of dollars. Thus, the plan of reorganization was neither fair nor reasonable to Selnick.
 
 
 32
 Debtor also contends that the Confirmation Order should be affirmed because Selnick released any claims she had against Debtor and all other parties involved in this bankruptcy when she cashed checks bearing a restrictive endorsement. Debtor argues that this release moots Selnick's appeal. We disagree. The bankruptcy court ordered that Selnick could negotiate the checks she received under the plan of reorganization without releasing her claims against Debtor or any other party listed in the restrictive endorsements. Debtor did not appeal this order, and he cannot now collaterally attack that order. See Sidney v. Zah, 718 F.2d 1453, 1457-58 (9th Cir.1983). Even if we were to address Debtor's argument, Selnick could not have released her claims by cashing Debtor's checks pursuant to a court order that permitted Selnick to negotiate Debtor's restrictively endorsed checks without releasing her claims against Debtor.
 
 
 33
 Debtor also contends that the Confirmation Order should be affirmed because Selnick failed to obtain a stay pending her appeal of the Confirmation Order, thereby mooting her appeal.[12] We disagree. The district court rejected this same argument in 1994 when it denied Debtor's motion to dismiss on grounds of equitable mootness Selnick's appeal of the Exclusion Order. Debtor did not appeal that order, and cannot now collaterally attack it. See id. Even if we were to address the merits of Debtor's argument, Selnick's claim is not equitably moot because this case does not present transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply. Compare In re Spirtos, 992 F.2d 1004, 1007 (9th Cir.1993) (finding appeal not moot when court could order debtor to return to estate postconfirmation distributions of pension plan assets), with In re Roberts Farms, Inc., 652 F.2d 793 (9th Cir.1981) (finding appeal moot when attempt to change plan distributions would create an unmanageable and uncontrollable situation), and In re Combined Metals Reduction Co., 557 F.2d 179 (9th Cir.1977) (finding appeal moot when vacating plan would be ineffective to undo sales, leases, and options long ago consummated under plan). Because we can fashion effective relief for events that transpired as a result of the bankruptcy court's refusal to grant Selnick's request for a stay, Selnick's appeal is not equitably moot. See Spirtos, 992 F.2d at 1006.
 
 
 34
 Debtor also contends that the Confirmation Order should be affirmed because the exclusion issue was resolved when the Chapter 7 Trustee dismissed with prejudice a turnover action against the Pension Plan Trustee. Debtor argues that this dismissal with prejudice bars Selnick's appeal of the Confirmation Order under the doctrine of res judicata. We disagree because the turnover action involved a dispute between the Pension Plan Trustee and the Chapter 7 Trustee, while the challenge to the Exclusion Order involves a dispute between Debtor and Selnick. Because Debtor cannot demonstrate that the parties in the first action are "the same parties or their privies" as the parties in the current action, his res judicata argument fails. See Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); Ross v. International Bhd. of Elec. Workers, 634 F.2d 453, 457 (9th Cir.1980). For this same reason, Debtor's reliance on In re Marino, 213 B.R. 846 (9th Cir. BAP 1997), is misplaced.
 
 CONCLUSION
 
 35
 Based on the foregoing, the district court's orders are affirmed, and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion.
 
 
 36
 AFFIRMED.
 
 
 
 [1]
 Sun is the successor in interest to Resorts International, Inc. ("Resorts"), which has been involved in litigation with the Pension Plan Trustee in the United States Bankruptcy Court for the District of New Jersey. During Debtor's bankruptcy proceedings, Resorts won a $5 million judgment against the Pension Plan. The Pension Plan Trustee appealed that judgment to the New Jersey District Court, which reversed the judgment. Resorts then appealed the district court's order reversing the judgment to the Third Circuit. That appeal is still pending
 
 
 [2]
 On January 5, 1993, Debtor's bankruptcy was converted to Chapter 7. On February 12, 1993, Debtor's bankruptcy was reconverted to Chapter 11
 
 
 [3]
 Debtor has separately appealed the bankruptcy court's decision to apply Nevada law to the 11 U.S.C. § 522(b) exemption issue. That appeal is addressed in a separate opinion
 
 
 [4]
 A QDRO is necessary to create a property interest in an ERISA pension plan. See Boggs v. Boggs, 520 U.S. 833, 846, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997); In re Gendreau, 122 F.3d 815, 817-19 (9th Cir.1997)
 
 
 [5]
 During the divorce proceedings, Debtor testified that he was the sole beneficiary of the Pension Plan, see Lowenschuss, 683 A.2d at 1215, which would have excluded the Pension Plan from the scope of ERISA. See 29 U.S.C. § 1135; In re Watson, 161 F.3d 593, 594 (9th Cir.1998). Consequently, Debtor's argument that the Pennsylvania courts intentionally declined to issue a QDRO is not persuasive. In fact, the Pennsylvania courts have already cleared the way for the modification of the Divorce Decree to provide for a QDRO. See Lowenschuss, 683 A.2d at 1216 (holding modification is "necessary to carry out the equitable distribution order and give the parties the benefits they were entitled to under the equitable distribution order")
 
 
 [6]
 Because we hold today that the Pennsylvania divorce court awarded Selnick an outright ownership interest in 38.7% of the Pension Plan assets, Debtor's bankruptcy estate contains only Debtor's interest in the remaining 61.3% of the Pension Plan assets
 
 
 [7]
 Selnick's case is therefore distinguishable from In re Ellis, 72 F.3d 628 (8th Cir.1995), upon which Debtor relies. In Ellis, the Eight Circuit found that the interest awarded to the debtor's former spouse "was not in any way linked to the pension or profit-sharing payments to be received by [the debtor]." See id. at 632. In this case Selnick's interest is directly linked to the Pension Plan
 
 
 [8]
 It has long been established in these proceedings that Debtor and the Pension Plan are one in the same. A Pennsylvania court has found that "[t]he pension fund is completely managed by [Debtor]." See Lowenschuss v. Lowenschuss, 453 Pa.Super. 340, 683 A.2d 1214, 1215 (1996), appeal denied, 548 Pa. 628, 693 A.2d 967 (1997). Similarly the bankruptcy court found that Debtor controlled the Pension Plan at all times relevant to this appeal. This finding is supported by the record. Even this court has stated that "[d]uring the time period relevant to this appeal, [Debtor] has been the trustee, administrator, sponsor, and sole beneficiary of the Pension Plan." In re Lowenschuss, 67 F.3d 1394, 1396 (9th Cir.1995)
 
 
 [9]
 The issue of whether the Pension Plan is an "ERISA-qualified" plan is the subject of a separate appeal by Debtor in which we affirm the bankruptcy court's finding that the Pension Plan was not an ERISA-qualified plan on the petition date. See In re Lowenschuss, No. 98-15292, 1999 WL 140740 (9th Cir.1999)
 
 
 [10]
 The district court understood this principle when it declared in a minute order that the plan of reorganization could not be confirmed until the exclusion issue had been resolved
 
 
 [11]
 In addition, we have already held in a related appeal that the bankruptcy court erroneously confirmed the plan of reorganization because the plan purported to release claims against third-party nondebtors. See In re Lowenschuss, 67 F.3d 1394, 1401 (9th Cir.1995). In that appeal, we stated that the Bankruptcy Code "precludes bankruptcy courts from discharging the liabilities of non-debtors," see 11 U.S.C. § 524(e), and that a "bankruptcy court lacks the power to confirm plans of reorganization which do not comply with applicable provisions of the Bankruptcy Code." Id. Because Debtor's plan did not comply with 11 U.S.C. § 524(e), it could not have been confirmed
 
 
 [12]
 Selnick moved for a stay of the Confirmation Order, but that motion was denied by the bankruptcy court, stating that Selnick's remedy was by way of appeal, which Selnick diligently pursued