**In re Christopher PAASCH, Debtor.**

**No. LA 02–43601–SB.**

United States Bankruptcy Court,
C.D. California.

Oct. 6, 2005.

Kathleen P. March, Los Angeles, CA, for debtor.

Robert L. Esensten, Beverly, CA, for creditor.

Nancy Curry, Los Angeles, CA, Chapter 13 Trustee.

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (West 1999)

## ORDER DENYING CHAPTER 13 PLAN CONFIRMATION

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

Debtor Christopher S. Paasch, a racehorse trainer, has proposed an amended Chapter 13 [1] plan in this case, pursuant to which most of his plan payments would come from money that he intends to borrow from one of his clients. The Court finds that such a plan is not confirmable and denies confirmation.

### II. RELEVANT FACTS

Christopher Paasch ("Paasch") requests the court to confirm his chapter 13 plan, proposed principally to deal with support and property division payments owing to his ex-wife Arlene Kovnick. Pursuant to the plan, Paasch proposes to pay $2,399 per month for the benefit of his creditors during the remaining 26 months of his 36–month plan. Under the plan, the administrative claims and the unsecured claims of Kovnick and the IRS claim will be paid in full. The remaining unsecured creditors will receive payment of 4.93% of their claims.

However, based on his disposable income, Paasch admits that he can only afford plan payments of $508 per month after the payment of reasonable and necessary living expenses. Paasch proposes to cover the shortfall of $1,891 per month by borrowing $50,000 from a client, and to repay the loan after the completion of his chapter 13 plan.

Nancy Curry, the chapter 13 trustee, objects to confirmation of the plan, in part

and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

on the grounds that Paasch does not have sufficient disposable income to fund the proposed plan under § 1325(b)(2). Thus, she argues, the plan is merely an effort to forestall creditors from exercising their rights against him. Paasch claims that by borrowing $50,000 and adding that amount to his actual surplus of $508 per month, he is making the required "best efforts" to pay his creditors and that the plan is proposed in good faith.

## III. ANALYSIS

Section 1325[2] requires the confirmation of a chapter 13 plan if it meets six requirements: (1) the plan complies with other provisions of bankruptcy law; (2) all pre-confirmation fees and charges have been paid; (3) the plan has been proposed in good faith and not by any means forbidden by law; (4) creditors will receive present value equal to what they would receive in a chapter 7 liquidation; (5) for secured claims, the claimant accepts the plan, the debtor surrenders the collateral, or the plan meets the "fair and equitable" test; and (6) the plan is feasible (i.e., the debtor will be able to comply with the plan and make the payments thereunder).

If the trustee objects to the confirmation of the plan, § 1325(b) imposes a seventh requirement, that the court may not confirm the plan unless either (a) all allowed unsecured claims are paid in full, or (b) the debtor applies all of his projected disposable income for three years to make the plan payments (the "best efforts" test).[3]

2. Section 1325(a) provides:

The court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
(3) the plan has been proposed in good faith and not by any means forbidden by law;
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
(5) with respect to each allowed secured claim provided for by the plan-
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

3. Section 1325(b) provides in relevant part:
(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan-
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
(A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made ....

For debtors not engaged in business, "disposable income" is defined in § 1325(b)(2)(A) as income not reasonably necessary for the maintenance or support of the debtor or the debtor's dependents.

## A. Good Faith

■ Section 1325(a)(3) requires that a chapter 13 plan be "proposed in good faith and not by any means forbidden by law." Although "good faith" is not defined by the statute or its legislative history, the Ninth Circuit has held that a "good faith test ... should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13." *In re Chinichian*, 784 F.2d 1440, 1444 (9th Cir.1986); *see also In re Goeb*, 675 F.2d 1386, 1389–90 (9th Cir.1982); H.R. REP. No. 96–1195, at 24–25 (1980); S. REP. No. 95–989, at 126, 142 (1978); H.R. REP. No. 95–595, at 412, 430 (1977), U.S.Code Cong. & Admin.News 1977, pp. 5963, 5785. The trustee contends that Paasch's chapter 13 plan fails the good faith test because he proposes to borrow $50,000 from a client to make his plan payments.

The general purpose of a plan under chapter 13 is to provide a fresh start to the debtor, while, at the same time, providing for payment of debts owing to creditors. Under chapter 7, a debtor gives up all of his or her nonexempt assets for sale by the trustee and distribution (after paying administrative expenses) to creditors pro rata, after the payment of priority creditors. *See* §§ 541, 725, 726(b).

Chapter 13, however, is based on quite a different deal between the debtor and the creditors: under chapter 13, the debtor is entitled to keep all of his or her assets at the time of filing, in exchange for making payments to the creditors over a period of three to five years. *See* §§ 1306(a)-(b); 1322(d); *see also* H.R. REP. No. 95–595, at 118 (1977) (describing benefit of chapter 13

repayment plan over chapter 7 liquidation as allowing debtor to protect and retain his assets). Creditors are protected under this arrangement by a requirement that the payments to creditors must be at least as much as they would receive under a chapter 7 liquidation. *See* § 1325(a)(4).

In promulgating chapter 13, Congress undertook a substantial revision to chapter XIII of the former Bankruptcy Act. Congress found that, in certain areas of the country:

[I]nadequate supervision of debtors attempting to perform under wage earner plans have made them a way of life for certain debtors. Extensions on plans, new cases and *newly incurred debts* put some debtors under court supervised repayment plans for 7 to 10 years. This has become the closest thing to indentured servitude: it lasts for an indefinite period and *does not provide the relief and fresh start for the debtor that is the essence of modern bankruptcy law.*

*See* H.R. REP. No. 95–595, at 117 (1977), U.S.Code Cong. & Admin.News 1977, pp. 5963, 6078 (emphasis added). The Committee on the Judiciary of the House of Representatives further explained the legislative intent of chapter 13 as follows:

[T]he debtor is given adequate exemptions and other protections to ensure that bankruptcy will provide a fresh start. ... The premises of the bill with respect to consumer bankruptcy are that use of the bankruptcy law should be a last resort; that if it is used, debtors should attempt repayment under chapter 13 ... *and finally, whether the debtor uses chapter 7,* Liquidation, *or chapter 13,* Adjustment of Debts of an individual, *bankruptcy relief should be effective, and should provide the debtor with a fresh start.*

*Id.*

Paasch's proposal in this case would barely make a start toward the fresh start

contemplated by chapter 13. Upon completion of the plan, Paasch would still owe nearly $50,000 in new debt undertaken to pay off his old debt. Furthermore, it is not apparent how Paasch could pay this new debt. Given his present monthly disposable income of $508, it would take ten additional years to pay off the new loan. This total of thirteen years far exceeds the statutory limit of five years for a chapter 13 plan and comes close to the situation of indentured servitude that debtors frequently suffered under chapter XIII. Chapter 13 does not contemplate such a result.

There is no provision in chapter 13 that explicitly prohibits a debtor from borrowing money for chapter 13 plan payments. However, the court finds that a chapter 13 plan that proposes to fund more than 70% of the payments by borrowing money fails the "good faith" test, and cannot be confirmed.

## B. Other Trustee Objections

The trustee also argues that Paasch fails the "good faith" requirement in two other respects. First, she contends that the plan improperly divides the general unsecured creditors into two subclasses, one of which will be paid in full and the other only 4.93%. Second, the trustee argues that Paasch has not been truthful and honest with the court: he has not disclosed all of his income, has failed to disclose sources of income, has concealed assets and has falsified his expenses.

Finally, the trustee argues that Paasch cannot meet the "best efforts" requirement of § 1325(b)(1) because of his failure to disclose all amounts and sources of income and his concealment of assets and falsification of expenses.

The court would likely be required to take testimony on these issues before it could conclude that the chapter 13 requirements for plan confirmation are met. However, the court does not reach these issues because its finding on borrowing money to make more than 70% of the plan payments is dispositive.

## IV. CONCLUSION

The Court finds that, under the circumstances of this case, the proposed plan is not viable and denies Paasch of a fresh start. The substitution of new debt for more than 70% of the existing, old debt is simply not within the contemplation of chapter 13. Moreover, without the borrowed funds, Paasch lacks the disposable income necessary to make his proposed plan a viable one.

For the foregoing reasons, the court finds that debtor's proposed chapter 13 plan does not meet the requirements of good faith. Accordingly, the court denies confirmation of the plan.