SNEED, Circuit Judge:
 

 Debtor David W. Watson, M.D., (“Watson”) appeals from the Bankruptcy Appellate Panel (“BAP”) judgment that the David W. Watson, M.D., P.C. Profit Sharing Plan and Trust Agreement (“Plan”) is not excluded from his bankruptcy estate under 11 U.S.C. § 541(c)(2) because it does not constitute an “employee benefit plan” under the Employee Retirement Income Security Act of 1974 (“ERISA”), 29 U.S.C. § 1003(a) (1988).
 

 Watson argues that he is an “employee” under ERISA despite the fact that he is the sole shareholder in his own corporation. Watson concedes that his Plan is not ERISA-qualified under the relevant Department of Labor regulations, but he contends that those regulations are inconsistent with ERISA, no longer applicable, and violative of his right to equal protection of the laws.
 

 We are not persuaded. We hold that ERISA, read in tandem with the Department of Labor regulations, does not cover “employee benefit plans” such as Watson’s where the lone participant is a self-employed sole shareholder in his own corporation. We therefore affirm the BAP.
 

 
 *595
 
 I.
 

 BACKGROUND
 

 Watson, an anesthesiologist, is the sole owner of his medical corporation. The Plan, which he established in 1985, contains a valid anti-alienation provision, i.e., a restriction on the transfer of Watson’s beneficial interest, and qualifies for favorable tax treatment by the Internal Revenue Service. Watson is the sole sponsor, participant and (along with his ex-wife) beneficiary of the plan.
 
 [1]
 

 In 1987, Watson entered into partnership with Dr. Clisto D. Beaty, M.D. The partnership employed four nurses from 1987 until it was dissolved, in 1992. During that period, the partnership established and maintained an IRS-approved pension plan (“joint venture plan”) for the four nurses which was separate and distinct from Watson’s Plan. At no time did the nurses participate in Watson’s Plan.
 

 "When Watson and Beaty dissolved their partnership in 1992, the nurse employees established their own professional corporations and rolled their pension funds from the joint venture plan into separate individual pension plans. Again, at no time were these plans part of Watson’s Plan.
 

 Watson eventually moved his practice from Utah to Nevada several months before his divorce was finalized. On July 7, 1995, the same date that the final divorce decree was filed in Utah state court, Watson filed his chapter 7 bankruptcy case in Nevada.
 

 On his Schedule “C,” Property Claimed as Exempt, Watson listed his interest in the Plan, valued at $290,000, along with his $6,000 interest in a separate Individual Retirement Account. The chapter 7 trustee objected to Watson’s claim that the Plan is excludable pursuant to ERISA, maintaining instead that only state law exemptions are applicable. The trustee argued that, under Nevada law, the exemption is limited to $100,000.
 
 [2]
 

 On February 13, 1996, the bankruptcy court concluded that the Plan was not excludable from the bankruptcy estate under 11 U.S.C. § 541(c)(2) because it did not qualify for ERISA protection. The court held that the Plan was not an “employee benefit plan” under ERISA because it never provided benefits to “employees” as defined by the Secretary of Labor and never had any “participants” other than Watson. Thus, Watson was only entitled to the $100,000 Nevada exemption.
 

 On March 11, 1996, Watson moved the bankruptcy court to reconsider its decision, arguing that his constitutional right to equal protection had been denied and that the Department of Labor had exceeded its administrative authority in issuing the ERISA regulations. The bankruptcy court affirmed its prior ruling and Watson timely filed his notice of appeal.
 

 In October, 1997, the BAP affirmed the lower court’s decision, holding that the Plan was partially exempt only under Nevada law for the following reasons: (1) the debtor’s Plan was not ERISA-qualified because the debtor was a self-employed sole shareholder who did not meet the definition of “employee” under ERISA and the Department of Labor regulations; (2) the Secretary of Labor’s regulations are consistent with ERISA;
 
 *596
 
 and (3) application of the regulations did not result in a violation of Watson’s right to equal protection.
 

 We affirm the judgment of the BAP.
 

 II.
 

 STANDARD OF REVIEW
 

 Findings of fact below are scrutinized for clear error.
 
 See In re Windmill Farms, Inc.,
 
 841 F.2d 1467, 1469 (9th Cir.1988). We review de novo conclusions of law.
 
 See id.
 

 III.
 

 DISCUSSION
 

 A. ERISA Qualification
 

 1.
 
 Importance of ERISA Qualification
 

 Both parties agree that if the Plan is considered an “employee benefit plan” under ERISA, then Watson can exclude it in its entirety pursuant to 11 U.S.C. § 541(c)(2).
 
 See Patterson v. Shumate,
 
 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (holding that Bankruptcy Code and ERISA establish that the anti-alienation provision in qualified pension plan constitutes restriction on transfer enforceable under “applicable nonbank-ruptcy law” for purposes of 11 U.S.C. § 541(c)(2)).
 

 If the Plan is not ERISA-qualified, only $100,000 of the total $290,000 in the Plan is exempted under Nevada law from the bankruptcy estate.
 
 [3]
 
 We now turn to the statute itself and the ancillary regulations.
 

 2.
 
 “Employee” Issue
 

 Petitioner claims, to repeat, that he is an “employee” for purposes of ERISA-quali-fication. An ERISA employee benefit plan must have “participants” which are present or former employees of an employer.
 
 [4]
 
 29 U.S.C. § 1002(6). The Department of Labor regulations, issued pursuant to 29 U.S.C. § 1135, provide in pertinent part:
 

 (b) Plans without employees. For purposes of Title I of [ERISA], the term “employee benefit plan”
 
 shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan,
 
 as defined in paragraph (d) of this section. For example, a so-called “Keogh” or “H.R. 10” plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under Title I. However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under Title I....
 

 29 C.F.R. § 2510.3-3(b) (1998) (emphasis added).
 

 While it is clear that ERISA-qualified plans must have “employee” participants, the statute does not adequately define the term “employee.” Under ERISA, an “employee” is “any individual employed by an employer,” 29 U.S.C. § 1002(6), but this definition is “completely circular and explains nothing.”
 
 Nationwide Mut. Ins. Co. v. Darden,
 
 503 U.S. 318, 323, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992). Therefore, the text of ERISA alone does not resolve the issue now before us, i.e., whether a “dual status” employer/employee is considered an “employee” for purposes of ERISA-qualification.
 

 For the answer to that query, we turn instead to the Department of Labor regulations. Congress authorized the Secretary of Labor to “prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this [ERISA] subchapter.” 29 U.S.C. § 1135. Pursuant to that grant of authority, the Secretary promulgated regulations which have been in effect for over twenty years. The regulations provide, in pertinent part, that: “[a]n individual and his
 
 *597
 
 or her spouse
 
 shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual
 
 and his or her spouse....” 29 C.F.R. § 2510.3-3(c)(1) (1998) (emphasis added). Inasmuch as Watson wholly owns his own medical corporation, under the regulations, he is not an “employee” for purposes of ERISA.
 

 Watson must therefore attack the legitimacy of the regulations to the extent they preclude qualification of his Plan under ERISA. He contends that
 
 Darden,
 
 503 U.S. at 323, 112 S.Ct. at 1348, 117 L.Ed.2d 581, effectively replaces the Department of Labor definition of “employee” with the traditional agency law definition.
 
 Darden
 
 has no such effect.
 

 In
 
 Darden,
 
 the Supreme Court addressed a different issue. Whereas here, the issue is one of a “dual status” employer-employee, in
 
 Darden
 
 the issue involved the distinction between “employees” and “independent contractors.” Darden, an insurance salesman, contracted with Nationwide Mutual Insurance Company, promising to sell only Nationwide policies. In deciding whether Darden could properly be considered Nationwide’s “employee” for purposes of ERISA, the Court held that the term “employee” as it appeal’s in ERISA, 29 U.S.C. § 1002(6), incorporates “traditional agency law criteria
 
 for identifying master-servant relationships.” Darden,
 
 503 U.S. at 319, 112 S.Ct. at 1346, 117 L.Ed.2d 581 (emphasis added).
 

 The traditional agency criteria can be applied logically only in situations involving relationships between two different persons, i.e., those who employ persons and those who are so employed. Accordingly,
 
 Darden
 
 instructs that we apply the traditional agency definition of “employee” when confronted with the question of whether a specific individual is, in relation to another, an employee or an independent contractor for purposes of ERISA. 503 U.S. at 325, 112 S.Ct. 1344. The issue we confront here is different. It is whether a self-employed owner is also his own “employee” for purposes of qualifying his Plan under ERISA. Traditional agency law criteria provide no answer. Thus, we cannot logically apply
 
 Darden
 
 in this case.
 
 [5]
 

 Kennedy v. Allied Mutual Insurance Company,
 
 952 F.2d 262 (9th Cir.1991), on the other hand, addresses the very issue raised here. In that case, the Kennedy brothers owned an advertising company and established a pension plan in which they were the only participants. The Kennedy brothers, like Watson, argued that their plan was ERISA-qualified, but this Court disagreed, holding that self-employed owners of a corporation are not “employees” for purposes of ERISA.
 
 See id.
 
 at 264. Here, the facts are much the same. Watson owned his own corporation and, like the Kennedys, was self-employed. Watson, like the Kennedys, was the sole participant in his own pension plan. Thus, the BAP correctly acknowledged that
 
 Kennedy
 
 controls this case and held that Watson was not considered an “employee” for purposes of ERISA.
 
 [6]
 

 B.
 
 The Department of Labor Regulations
 

 Watson also claims that the Department of Labor’s regulations are ultra
 
 *598
 
 vires and inconsistent with ERISA. A federal regulation in conflict with a federal statute is
 
 invalid
 
 as a matter of law.
 
 See Chemical Mfrs. Ass’n v. Natural Resources Defense Council, Inc.,
 
 470 U.S. 116, 126, 105 S.Ct. 1102, 1108, 84 L.Ed.2d 90 (1985). In order to determine whether these regulations conflict with ERISA, we must first examine the plain meaning of the pertinent language of ERISA.
 
 See id.
 
 In interpreting the plain meaning of a statute, even one in which Congress has delegated its legislative authority to a particular agency, it must be determined whether Congress has spoken directly to the issue.
 
 See Matinchek v. John Alden Life Ins. Co.,
 
 93 F.3d 96, 100 (3rd Cir.1996);
 
 accord Chevron U.S.A. v. Natural Resources Defense Council, Inc.,
 
 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
 

 The plain language of ERISA is ambiguous with respect to the classification of a “dual status” employer/employee. ERISA, which states only that an employee is “any individual employed by an employer,” 29 U.S.C. § 1002(6), provides scarcely a hint as to “whether an insurance plan covering only a business owner and his or her immediate family members can qualify as an employee welfare benefit plan.”
 
 Matinchek,
 
 93 F.3d at 100.
 

 In anticipation of the need to fill such gaps, Congress authorized the Secretary of Labor to prescribe “regulations as he finds necessary or appropriate to carry out the provisions of this [ERISA] subchapter.” 29 U.S.C. § 1135 (1988). Pursuant to this authority, the Secretary issued the regulation in question, 29 C.F.R. § 2510, which clearly does not conflict with the plain meaning of the statute.
 

 Moreover, these regulations are reasonable. On judicial review, we can only ask whether the rule representing the agency’s construction was reasonable or “reasonably defensible.”
 
 Sure-Tan, Inc. v. NLRB,
 
 467 U.S. 883, 891, 104 S.Ct. 2803, 2808, 81 L.Ed.2d 732 (1984) (referencing definition of “employee” constructed by National Labor Relations Board);
 
 accord Chevron,
 
 467 U.S. at 844, 104 S.Ct. at 2782, 81 L.Ed.2d 694. These regulations are clearly reasonable. They properly serve the congressional purpose to the extent ascertainable from the text and legislative history.
 

 ERISA Title I was adopted by Congress in 1974, in part, to remedy abuses by employers who manage pension plan assets held in trust for workers in traditional employer-employee relationships.
 
 [7]
 

 Schwartz v. Gordon,
 
 761 F.2d 864, 868 (2nd Cir.1985) (citing S.Rep. No. 127 at 3-5 (1994),
 
 reprinted in
 
 1974 U.S.C.C.A.N. 4639, 4838, 4839-42). Congress recognized that workers, i.e., traditional “employees,” are vulnerable to abuse by employers because employers typically maintain exclusive control over the pension funds of their employees. In contrast, a self-employed individual such as Watson, has complete control over the amount, investment and form of the fund because he voluntarily creates and manages it for his own retirement. Congress had no reason to extend ERISA coverage to self-employed owners such as Watson.
 
 [8]
 
 Self interest provides adequate protection. Therefore, it was reasonable for the Department of Labor to exclude self-employed sole shareholders from its definition of “employees” for purposes of ERISA.
 

 The case law supports this conclusion. As the Third Circuit recently noted, “[i]t strikes us that the Department of Labor’s regulations are eminently reasonable. The regulations are consistent with the goals of ERISA and with a common sense understanding of the terms ‘employer’ and ‘employee.’ ”
 
 Matinchek,
 
 93 F.3d at 100;
 
 accord Kwatcher v. Massachusetts Serv. Employees Pension
 
 
 *599
 

 Fund,
 
 879 F.2d 957 (1st Cir.1989);
 
 Schwartz,
 
 761 F.2d 864.
 

 The regulations, to repeat, are reasonable and deserve our deference.
 

 C.
 
 The Equal Protection Claim
 

 Watson’s equal protection argument needs little discussion. Generally, as long as the lawmakers have a “rational basis” for creating a classification, and the classification does not affect a “suspect class,” the law passes the equal protection test.
 
 See, e.g., Richardson v. Belcher,
 
 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971);
 
 Dandridge v. Williams,
 
 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970) (requiring that a statutory classification be rationally based and free from invidious discrimination).
 

 Here, Watson fails to show that he is a member of a suspect class or that the classification at issue is not rationally related to a legitimate government purpose. When a plan’s sole participant is simultaneously employer, employee, fiduciary and beneficiary, it is certainly rational to exclude such a plan from the scope of ERISA. Such arrangements are not what Congress intended to protect.
 

 Accordingly, we reject Watson’s constitutional claim.
 

 IV.
 

 CONCLUSION
 

 For the reasons stated, we deny Watson’s appeal and uphold the BAP’s decision that Watson’s Plan is not excluded from the bankruptcy estate under ERISA.
 

 AFFIRMED.
 

 [1]
 

 . The record in this case provides convincing evidence to support the BAP’s finding that Watson was the sole participant in the Plan. According to the Plan administrator, an employee of Rocky Mountain Employee Benefits, Inc., "the David W. Watson, MD, APC Profit Sharing Plan was created on July 1, 1985 as a single-employer profit sharing plan.... Since the inception of the plan, all information provided to Rocky Mountain Employee Benefits, Inc. indicated that the employer sponsor of the [Plan] had no employees other than David W. Watson and that he is and has been, since the inception of the plan, the sole plan participant.”
 

 From 1985 until 1994, Watson filed tax returns for the Plan, titled "Annual Return of
 
 One-Participant
 
 (Owners and Their Spouses) Pension Benefit Plan” (emphasis added). On each of those forms, Watson specifically indicated that the "number of participants” was “1” and answered "No” to the question of whether his business had "any employees other than you and your wife.” Thus, according to his own yearly assessment of the Plan given over its ten-year life-span, Watson stated under penalty of perjury that he was the sole plan participant.
 

 [2]
 

 . Nevada law, NRS 21.090(1)(q), limits Watson's exempt interest in these assets to a value of $100,000 in the event ERISA is deemed inapplicable.
 

 [3]
 

 ., We do not address the issue of state law in any more detail because there is no dispute regarding its effect once ERISA is found inapplicable.
 

 [4]
 

 . Watson contends that his plan is sufficiently related to the plan covering his nurse "employees” to warrant ERISA coverage for his own Plan. However, even if the plans were created simultaneously or shared other common characteristics, they are independent plans under ERISA. Watson provides no authority and we find no provisions in ERISA or interpretations in the case law which support his proposition.
 

 [5]
 

 . Furthermore, the Supreme Court in
 
 Darden
 
 was not guided by any administrative regulations. The Court stated that it was unable to find any provision giving specific meaning to the term "employee” in a master-servant context.
 
 Darden,
 
 503 U.S. at 323, 112 S.Ct. at 1348, 117 L.Ed.2d 581. Here, on the other hand, Lhe Department of Labor regulations speak directly to our issue, plainly stating that self-employed owners are not “employees” for purposes of ERISA.
 

 [6]
 

 . The case law in this and other circuits overwhelmingly supports the BAP's conclusion.
 
 See Matinchek v. John Alden Life Ins. Co.,
 
 93 F.3d 96 (3rd Cir.1996) (holding that plan covering only sole business owner and his or her immediate family members cannot qualify as employee welfare benefit plan under ERISA);
 
 Peterson v. American Life & Health Ins. Co.,
 
 48 F.3d 404 (9th Cir.1995) (same);
 
 Meredith v. Time Ins. Co.,
 
 980 F.2d 352 (5th Cir.1993) (same);
 
 Fugarino v. Hartford Life & Accident Ins. Co.,
 
 969 F.2d 178 (6th Cir.1992) (same);
 
 Kwatcher v. Massachusetts Serv. Employees Pension Fund,
 
 879 F.2d 957 (1st Cir.1989) (holding that sole shareholder employed by company he owned was “employer” for purposes of ERISA);
 
 Schwartz v. Gordon,
 
 761 F.2d 864 (2nd Cir.1985) (holding that plan whose sole beneficiaries are company’s owners cannot qualify as plan under ERISA);
 
 Peckham v. Board of Trustees,
 
 653 F.2d 424 (10th Cir.1981) (holding that sole proprietors cannot have dual status under ERISA as employer and employee).
 

 [7]
 

 . "It is hereby declared to be the policy of this chapter to protect ... the interests of participants in employee benefit plans and their beneficiaries, ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal Courts.” 29 U.S.C. § 1001(b).
 

 [8]
 

 . Congress had already enacted the Self-Employed Individuals Tax Retirement Act of 1962, the purpose of which is to encourage "self-employed persons to establish their own individual 'Keogh' or 'H.R. 10' pension plans by offering them favorable tax benefits.”
 
 Schwartz,
 
 761 F.2d at 868.