171 F.3d 673
 Bankr. L. Rep. P 77,919, 99 Cal. Daily Op. Serv. 1913,
1999 Daily Journal D.A.R. 2479
In re: Fred LOWENSCHUSS, Debtor.
Fred Lowenschuss, individually and in all capacities, Appellant,
and
Laurance Lowenschuss, Trustee of the Fred Lowenschuss
Associates Attorneys at Law Pension and Profit
Sharing Plan, Intervenor-Appellant,
v.
Beverly Selnick, Appellee.
 No. 98-15292.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 6, 1998.
Submission Deferred Oct. 9, 1998.
Resubmitted March 10, 1999.
Decided March 17, 1999.
 
 Robin L. Filion, Baker & McKenzie, San Francisco, California, for the appellant.
 Michael R. Griffinger, Gibbons, Del Deo, Dolan, Griffinger, & Vecchione, Newark, New Jersey, for the intervenor-appellant.
 Joseph S. Kistler, Gordon & Silver, Ltd., Las Vegas, Nevada, for the appellee.
 Appeal from the United States District Court for the District of Nevada; Edward C. Reed, Jr., District Judge, Presiding. D.C. No. CV-96-00767-ECR.
 Before: SNEED, HALL, and RYMER, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Fred Lowenschuss ("Debtor") appeals from the district court's order affirming the bankruptcy court's November 1, 1996 order: (1) ruling that the Fred Lowenschuss & Associates at Law Pension Plan ("Pension Plan") was not ERISA qualified on the petition date, and was therefore not excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2); (2) ruling that Nevada law would be applied to determine whether Debtor's interest in the Pension Plan was exempt from the bankruptcy estate under 11 U.S.C. § 522; and (3) granting Beverly Selnick's ("Selnick") renewed motion for the appointment of a Chapter 11 Trustee. The Pension Plan Trustee intervened in this appeal. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm.
 
 BACKGROUND
 
 2
 On September 28, 1981, Selnick filed for divorce in the Pennsylvania courts. Almost ten years later, in July 1991, a Pennsylvania divorce court entered an order (the "Divorce Decree") for the equitable distribution of the marital property of Debtor and Selnick. The Divorce Decree awarded Selnick, inter alia, an ownership interest in 38.7% of the assets of the Pension Plan. However, instead of transferring to Selnick her share of the Pension Plan assets, Debtor transferred over $8 million in Pension Plan assets out of Pennsylvania to avoid the jurisdiction of the Pennsylvania courts. Debtor followed his assets out of Pennsylvania, relocating in Nevada where, on August 24, 1992, he filed a Chapter 11 bankruptcy petition.[1] On his bankruptcy petition, Debtor listed as excluded from the bankruptcy estate his beneficial interest in the Pension Plan as an ERISA qualified plan under 11 U.S.C. § 541(c)(2) and Patterson v. Shumate, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). In the alternative, Debtor claimed that his interest in the Pension Plan was exempt from the bankruptcy estate under 11 U.S.C. § 522.
 
 
 3
 In deciding the composition of Debtor's bankruptcy estate, the bankruptcy court determined that the Pension Plan was "ERISA qualified," and therefore excluded from the bankruptcy estate Debtor's beneficial interest in the Pension Plan (the "Exclusion Order"). Selnick appealed the Exclusion Order, but while that appeal was still pending, the bankruptcy court confirmed Debtor's plan of reorganization (the "Confirmation Order"). Selnick appealed the Confirmation Order.
 
 
 4
 On appeal, the district court vacated the Exclusion Order, and remanded the case to the bankruptcy court to hear additional testimony on the exclusion issue. Pending resolution of the exclusion issue, the district court stayed Selnick's appeal of the money judgment ruling and the Confirmation Order, and issued a related minute order declaring that the plan of reorganization could not be confirmed until the exclusion issue had been resolved. Debtor immediately appealed the district court's order, and the Ninth Circuit dismissed the appeal for lack of jurisdiction.
 
 
 5
 On remand, the bankruptcy court determined that the Pension Plan was not ERISA qualified, and that therefore Debtor's beneficial interest in the Pension Plan could not be excluded from Debtor's bankruptcy estate (the "Inclusion Order"). After concluding that Debtor's interest in the Pension Plan was included in the bankruptcy estate, the bankruptcy court determined that Nevada law would control the issue of whether Debtor's interest in the Pension Plan was exempt from the bankruptcy estate under 11 U.S.C. § 522 (the "Exemption Law Order").[2] Finally, the bankruptcy court granted Selnick's motion for the appointment of a Chapter 11 Trustee for cause under 11 U.S.C. § 1104(a)(1), and for the best interests of the creditors under 11 U.S.C. § 1104(a)(2) (the "Trustee Order").
 
 
 6
 Debtor appealed the bankruptcy court's orders to the district court, and the district court affirmed all three orders. Debtor now appeals those orders to this Court. The Pension Plan Trustee has intervened in this appeal for the first time.
 
 DISCUSSION
 I. STANDING
 
 7
 Selnick contends that the Pension Plan Trustee lacks standing to intervene in this appeal. We disagree because the issues raised in this appeal implicate the status of the Pension Plan as an ERISA-qualified plan, and therefore directly affect the potential obligations and liabilities of the Pension Plan Trustee. Therefore, the Pension Plan Trustee has standing to intervene in this appeal. Cf. In re Moses, 215 B.R. 27, 34-35 (B.A.P. 9th Cir.1997), aff'd, 167 F.3d 470 (9th Cir.1999).
 
 II. MOOTNESS
 
 8
 Debtor and the Pension Plan Trustee contend that Selnick's appeal is moot because Selnick released all of her claims against Debtor by endorsing checks paid to her under the terms of the plan of reorganization. In addition, the Pension Plan Trustee contends that Selnick's appeal of the Exclusion Order is equitably moot because Selnick failed to obtain a stay pending her appeal of the Confirmation Order, and that principles of res judicata barred Selnick's initial challenge to the Exclusion Order. We disagree with each of these contentions.
 
 A. Release
 
 9
 Debtor contends that this bankruptcy proceeding is moot, and the Pension Plan Trustee contends that the Inclusion Order must be reversed, because Selnick released any claims she held against Debtor and the Pension Plan when she negotiated checks bearing a restrictive endorsement.[3] We disagree because the bankruptcy court ordered that Selnick could negotiate the checks she received under the plan of reorganization, notwithstanding the restrictive endorsements.[4] For this reason, the Pension Plan Trustee's reliance on Lockheed Corp. v. Spink, 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996), is misplaced. Therefore, Selnick's negotiation of the instruments bearing a restrictive endorsement could not have released her claims against Debtor, the Pension Plan, or any other party listed in the restrictive endorsements. Because Selnick did not release her claims, her appeal is not moot and the Inclusion Order does not need not be reversed.
 
 B. Equitable Mootness
 
 10
 The Pension Plan Trustee contends that Selnick's failure to obtain a stay of the Confirmation Order pending her appeal of the Exclusion Order mooted her appeal of the Exclusion Order.[5] We disagree because this case does not present transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply. Compare In re Spirtos, 992 F.2d 1004, 1007 (9th Cir.1993) (finding appeal not moot when court could order debtor to return to estate postconfirmation distributions of pension plan assets), with In re Roberts Farms, Inc., 652 F.2d 793 (9th Cir.1981) (finding appeal moot when attempt to change plan distributions would create an unmanageable and uncontrollable situation), and In re Combined Metals Reduction Co., 557 F.2d 179 (9th Cir.1977) (finding appeal moot when vacating plan would be ineffective to undo sales, leases, and options long ago consummated under plan). As in Spirtos, we could simply order Selnick to return to the bankruptcy estate those payments she received under the plan of reorganization. Because we are able to fashion effective relief for events that transpired as a result of the bankruptcy court's refusal to grant Selnick's request for a stay, Selnick's appeal is not equitably moot.[6] See Spirtos, 992 F.2d at 1006.
 
 C. Res Judicata
 
 11
 The Pension Plan Trustee contends that Selnick's challenge to the Exclusion Order was barred by principles of res judicata because the Chapter 7 Trustee dismissed with prejudice a turnover action against the Pension Plan Trustee. We disagree. The turnover action involved a dispute between the Pension Plan Trustee and the Chapter 7 Trustee, while the challenge to the Exclusion Order involves a dispute between Debtor and Selnick. Because the Pension Plan Trustee cannot demonstrate that the parties in the first action are "the same parties or their privies" as the parties in the current action, his res judicata argument fails. See Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); Ross v. International Bhd. of Elec. Workers, 634 F.2d 453, 457 (9th Cir.1980).
 
 
 12
 In addition, even if the Pension Plan Trustee could establish the same parties requirement, res judicata would not help the Pension Plan Trustee's cause. The Chapter 7 Trustee did not have the authority to dismiss the turnover action because the Chapter 7 Trustee's authority to act in this bankruptcy proceeding terminated when the case was converted from Chapter 7 to Chapter 11, see 11 U.S.C. § 348(e), which occurred more than one year before the dismissal of the turnover action. Consequently, the Chapter 7 Trustee's dismissal of the turnover action had no legal effect on Selnick's ability to challenge the Exclusion Order.
 
 III. EXCLUSION
 
 13
 Debtor contends that the bankruptcy court (1) lacked jurisdiction to reconsider the exclusion issue, and (2) erred by finding that Debtor's beneficial interest in the Pension Plan was not excluded from the bankruptcy estate under ERISA or Pennsylvania law. We disagree.
 
 A. Jurisdiction
 
 14
 Debtor contends that the bankruptcy court lacked jurisdiction to reconsider the exclusion issue on remand because the Confirmation Order ousted the bankruptcy court of jurisdiction to take any action inconsistent with the terms of the plan of reorganization. We find no merit in Debtor's argument because the district court effectively stayed the Confirmation Order pending resolution of the exclusion and exemption issues.[7] Cf. In re Chinichian, 784 F.2d 1440, 1444 (9th Cir.1986). Therefore, the bankruptcy court had jurisdiction to consider the exclusion issue on remand.
 
 B. ERISA
 
 15
 Debtor contends that the bankruptcy court erroneously determined that his beneficial interest in the Pension Plan was not excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2) and ERISA. The relevant inquiry in the bankruptcy context is whether, on the petition date, Debtor could have enforced under ERISA the Pension Plan's transfer restriction. See 11 U.S.C. § 541(a)(1), (c)(2); Patterson, 504 U.S. at 757-58, 112 S.Ct. 2242. We find that on the petition date Debtor could not have enforced the Pension Plan's transfer restriction under ERISA.
 
 
 16
 ERISA does not cover a pension plan of which the only beneficiary is the sole owner of the company funding the plan. See 29 U.S.C. § 1003(a) (declaring that ERISA applies to "employee" benefit plans); 29 C.F.R. § 2510.3-3(b), (c)(1) (excluding from ERISA plans without "employee" participants; excluding from definition of "employee" sole owner of company sponsoring plan); In re Watson, 161 F.3d 593, 596-99 (9th Cir.1998). Because on the petition date Debtor was both the sole beneficiary of the Pension Plan and the sole owner of the company funding the Pension Plan, the Pension Plan was not covered by ERISA on that date. Therefore, on the petition date, Debtor would have been unable to enforce the Pension Plan's transfer restriction under ERISA because the Pension Plan was not ERISA qualified. See Watson, 161 F.3d at 596 ("ERISA-qualified plans must have employee participants...."); Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 264 (9th Cir.1991) ("[A] plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA."). Because the Pension Plan's transfer restriction was unenforceable under ERISA on the petition date, Debtor's beneficial interest in the Pension Plan could not have been excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2) using ERISA as the applicable nonbankruptcy law.
 
 
 17
 Debtor contends that once the Pension Plan was established or maintained under ERISA, the Pension Plan could not lose its ERISA status merely by the attrition of all participants in the Pension Plan except for Debtor. Instead, Debtor argues that the Pension Plan could lose its ERISA status only if it was terminated pursuant to ERISA.[8] We disagree.
 
 
 18
 ERISA was "designed to ensure the proper administration of pension and welfare plans," and "to protect plan participants and beneficiaries." See 29 U.S.C. § 1001; Boggs v. Boggs, 520 U.S. 833, 839, 845, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). These protections were enacted "to remedy abuses by employers who manage pension plan assets held in trust for workers in traditional employer-employee relationships." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); accord Watson, 161 F.3d at 598. In Watson, we noted that self-employed owners of companies that sponsor pension plans were deliberately excluded from ERISA's protections because these individuals can protect their own beneficial interests in the plans. Watson, 161 F.3d at 598. In this case, Debtor was at all times the sole owner of Fred Lowenschuss & Associates, the sponsor of the Pension Plan.[9] In addition, for a period of at least seven years prior to the petition date, Debtor was the sole beneficiary of the Pension Plan. There were no ERISA "employees" or "participants" in the Pension Plan during this period. Finally, Debtor maintained complete control over the Pension Plan during this period, and had the power to terminate the Pension Plan and distribute the proceeds to himself. Therefore, Debtor did not need the protections of ERISA to protect himself from the Pension Plan's administrator because Debtor was the administrator.
 
 
 19
 ERISA was not designed as a means for Debtor, who happens to be simultaneously the "trustee, administrator, sponsor, and sole beneficiary of the Pension Plan," to exclude his interest in the Pension Plan from creditors of the bankruptcy estate. The Bankruptcy Code merely allows a transfer restriction that is enforceable outside of bankruptcy to be enforced within bankruptcy. Because Debtor could not have enforced the transfer restriction in the Pension Plan under ERISA outside of bankruptcy, he cannot now enforce it under 11 U.S.C. § 541(c)(2). Section 541(c)(2) does not make enforceable what is otherwise unenforceable.
 
 
 20
 Debtor next contends that the Department of Labor regulations are invalid to the extent those regulations exclude from the definition of an ERISA "employee" any individual who is the sole owner of the company sponsoring the pension plan. See 29 C.F.R. § 2510.3-3. We recently rejected this same argument in Watson, see 161 F.3d at 596-99, and therefore find it to be without merit.
 
 
 21
 Debtor and the Pension Plan Trustee contend that the district court clearly erred by finding that there were no employee-participants in the Pension Plan because at least one of Debtor's sons was an employee-participant of the Pension Plan during the relevant plan year. However, after reviewing the record, we find that the district court did not clearly err because neither of Debtor's sons could have qualified as an employee-participant in the Pension Plan on the petition date. The district court found that no contributions were made to the Pension Plan on behalf of Debtor's sons until December 1992, approximately four months after the petition date. See 29 C.F.R. § 2510.3-3(d)(1)(ii)(A) (employee becomes participant of pension plan on date that contribution is made on his behalf). In addition, the district court found that there was no documentary evidence to show that Debtor's sons had worked the 1000 hours per year minimum required for participation in the Pension Plan. See id. (employee becomes participant of pension plan on date that minimum number of hours worked). Therefore, Debtor's sons could not have been employee-participants in the Pension Plan on the petition date.[10]
 
 
 22
 Debtor also contends that his sons were former employees of Fred Lowenschuss & Associates who had a reasonable expectation of returning to covered employment with Fred Lowenschuss & Associates, and were therefore participants in the Pension Plan under Curtis v. Nevada Bonding Corp., 53 F.3d 1023, 1027 (9th Cir.1995). We disagree because in order for Debtor's sons to have had a reasonable expectation of returning to covered employment, Debtor's sons must have been covered employees before leaving that employment. Cf. McBride v. PLM Int'l, Inc., 153 F.3d 972, 976 (9th Cir.1998) (denying participant status to former employee who had been covered by ERISA plan did not have reasonable expectation of returning to covered employment when plan had been terminated); Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir.1986) (denying participant status to former employees who had already received full distribution of vested plan benefits and who had not alleged plan "to start accruing benefits once again under the pension plan"). Because neither of Debtor's sons was covered by the Pension Plan prior to or on the petition date, neither of Debtor's sons could have had a reasonable expectation of returning to covered employment after the petition date. Therefore, neither of Debtor's sons was a participant in the Pension Plan under Curtis.
 
 C. Pennsylvania Law
 
 23
 The Pension Plan Trustee contends that the bankruptcy court erred by not excluding Debtor's beneficial interest in the Pension Plan from the bankruptcy estate under Pennsylvania law.[11] We disagree.
 
 
 24
 In Patterson v. Shumate, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court stated, "The natural reading of the provision [11 U.S.C. § 541(c)(2) ] entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." See id. at 758, 112 S.Ct. 2242. Thus, in order for Debtor's beneficial interest in the Pension Plan to be excluded from the bankruptcy estate under Pennsylvania law, two conditions must be satisfied: (1) the Pension Plan must contain a transfer restriction, and (2) that transfer restriction must be enforceable under Pennsylvania law. Although the Pension Plan contains a transfer restriction, that transfer restriction is not enforceable under Pennsylvania law.
 
 
 25
 The Pension Plan cannot qualify as a valid Pennsylvania spendthrift trust because at all times relevant to this appeal Debtor was the settlor, administrator, and sole beneficiary of the Pension Plan, exercised control over the Pension Plan, and had the power to terminate the Pension Plan and distribute the proceeds to himself. Therefore, Debtor's interest in the Pension Plan cannot be excluded from the bankruptcy estate under Pennsylvania spendthrift trust law. See CIT Corp. v. Flint, 333 Pa. 350, 5 A.2d 126 (Pa.1939).
 
 
 26
 In addition, Debtor's interest in the Pension Plan cannot be excluded under section 8124(b) of the Pennsylvania Consolidated Statutes[12] because that exemption statute does not allow Debtor to enforce the Pension Plan's transfer restriction as Patterson requires. In Patterson, the Supreme Court held that the transfer restriction required in every ERISA plan was enforceable because ERISA-plan participants or beneficiaries could enforce that transfer restriction through ERISA's civil remedies. See 504 U.S. at 760, 112 S.Ct. 2242 (citing 29 U.S.C. § 1132(a)(3), (5)). In contrast, section 8124(b) does not provide a mechanism by which Debtor can enforce the transfer restriction contained in the Pension Plan. In fact, the section 8124(b) exemption operates without regard to a transfer restriction that may be contained in the trust instrument. Therefore, Debtor's interest in the Pension Plan cannot be excluded from the bankruptcy estate under section 8124(b).
 
 
 27
 We recognize that our decision creates a split among the circuits that have addressed the issue of whether the "restriction" to which 11 U.S.C. § 541(c)(2) refers must be contained within the trust instrument. Both the Third and Eleventh Circuits, the only other circuits to have considered this question, have decided that the restriction need not be contained in the trust instrument. See In re Yuhas, 104 F.3d 612 (3d Cir.1997) (finding section 25:2-1(b) of the New Jersey Statutes Annotated constitutes restriction on transfer of debtor's interest in IRA that is enforceable under applicable nonbankruptcy law); In re Meehan, 102 F.3d 1209 (11th Cir.1997) (finding section 18-4-22(a) of the Official Code of Georgia Annotated constitutes restriction on transfer of debtor's interest in IRA that is enforceable under applicable nonbankruptcy law); see also In re Johnson, 191 B.R. 75 (Bankr.M.D.Pa.1996). The Yuhas court reasoned that "[i]n Patterson, the Court said that a debtor may exclude a trust from the bankruptcy estate if the trust contains an appropriate restriction; the court did not say that a debtor may exclude a trust only if it, as opposed to a statute, contains such a restriction." 104 F.3d at 616 n. 3. Similarly, the Meehan court reasoned that "[n]othing in the language of [11 U.S.C. § 541(c)(2) ] suggests that the restriction must be contained both within a relevant nonbankruptcy statute and also within the trust instrument itself." 102 F.3d at 1211. We disagree.
 
 
 28
 We believe that the Supreme Court's statement in Patterson limited 11 U.S.C. § 541(c)(2) to its "natural reading"-a debtor's interest in a trust may be excluded from the bankruptcy estate only if the trust contains a transfer restriction, and that restriction is enforceable under applicable nonbankruptcy law. See 504 U.S. at 758, 112 S.Ct. 2242; cf. In re Baker, 114 F.3d 636, 638 (7th Cir.1997) ("[Section 541(c)(2) ] keeps out of the estate (and therefore out of creditors' hands) property in which the debtor owns the trust's beneficial interest, but subject to a spendthrift clause or some equivalent that prevents the debtor from converting a stream of future payments into a capital sum for current consumption."); S.Rep. No. 95-989, at 83 (1978), U.S.Code Cong. & Admin. News 1978, 5787 ("[11 U.S.C. § 541(c)(2) ] preserves restrictions on a transfer of a spendthrift trust...."); H.R.Rep. No. 95-595, at 369 (1977) ("[11 U.S.C. § 541(c)(2) ] preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law.").
 
 
 29
 We agree with the bankruptcy court in In re Zott, 225 B.R. 160 (Bankr.E.D.Mich.1998), that "to accept the premise espoused in Meehan, that a transfer restriction within a state statute is sufficient to meet the requirements of § 541(c)(2), would render the language 'enforceable under nonbankruptcy law' nugatory and meaningless surplussage because a state statute (nonbankruptcy law) is obviously enforceable under state law (nonbankruptcy law)." Id. at 165. Therefore, we find that the language in the statute lends itself to the Supreme Court's "natural reading" of 11 U.S.C. § 541(c)(2) because the redundancy created by the Third and Eleventh Circuits' holdings should be avoided under general principles of statutory construction. See Kungys v. United States, 485 U.S. 759, 778, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988); United States v. Smith, 155 F.3d 1051, 1058 (9th Cir.1998), cert. denied, --- U.S. ----, 119 S.Ct. 804, 142 L.Ed.2d 664 (1999).
 
 
 30
 In addition, we do not subscribe to the Eleventh Circuit's view that under our result the restriction "must be contained both within a relevant nonbankruptcy statute and also within the trust instrument itself." See 102 F.3d at 1211. Instead, we view our decision as requiring only that the trust instrument contain the restriction, and that the applicable federal or state law provides a means to enforce that restriction. See Patterson, 504 U.S. at 758, 112 S.Ct. 2242, Zott, 225 B.R. at 16365. Only if the transfer restriction contained in the trust instrument is enforceable under applicable nonbankruptcy law can the debtor's beneficial interest in that trust be excluded from the bankruptcy estate. See 11 U.S.C. § 541(c)(2); Patterson, 504 U.S. at 758, 760, 112 S.Ct. 2242. Because a debtor must be able to enforce the transfer restriction contained in a trust instrument under applicable nonbankruptcy law, and because section 8124(b) does not provide a means to enforce a transfer restriction contained in a trust, section 8124(b) cannot operate to exclude from the bankruptcy estate Debtor's interest in the Pension Plan.[13]
 
 IV. EXEMPTION
 
 31
 Debtor contends that the bankruptcy court erred by concluding that Debtor was domiciled in Nevada for the majority of the 180-day period preceding the petition date, and therefore erred by applying Nevada law to determine whether Debtor's beneficial interest in the Pension Plan was exempt from the bankruptcy estate under 11 U.S.C. § 522(b).[14] We will reverse the bankruptcy court's finding that Debtor was domiciled in Nevada only if that finding was clearly erroneous. See Lew v. Moss, 797 F.2d 747, 751 (9th Cir.1986). The bankruptcy court did not err.
 
 
 32
 Debtor was domiciled in Nevada for purposes of 11 U.S.C. § 522(b) if (1) Debtor was physically present in Nevada for the greater part of the 180-day period preceding the petition date, and (2) Debtor intended to remain in Nevada indefinitely. See Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); Lew, 797 F.2d at 752. The record shows that Debtor satisfied both the physical presence and intent requirements for domicile in Nevada.
 
 
 33
 First, the record shows that Debtor was physically present in Nevada for the majority of the 180-day period leading up to the petition date. Debtor admitted that he had been at his Nevada residence for four months prior to the petition date. In addition, Debtor admitted that he was a Nevada resident for over ninety days of the 180-day period preceding the petition date.
 
 
 34
 Second, the record shows that Debtor intended to remain in Nevada indefinitely. Debtor stated in a creditors meeting that he no longer had a residence in Pennsylvania, and that he intended to reside in Nevada for the indefinite future. In addition, when Debtor fled Pennsylvania for Nevada, he transferred out of Pennsylvania all of the assets of the Pension Plan, which was Debtor's sole source of income at the time. Debtor admitted that his decision to leave Pennsylvania was influenced by the outstanding bench and contempt warrants issued against him by the Pennsylvania courts as a result of his failure to appear in the divorce and distribution proceedings. Finally, Debtor testified that he left Pennsylvania to get a new start and to go on with his life, suggesting that he did not intend to return to Pennsylvania when he relocated to Nevada.
 
 
 35
 Because the bankruptcy court's finding that Debtor was domiciled in Nevada on the petition date is supported by the evidence, that finding was not clearly erroneous. See Duckett v. Godinez, 109 F.3d 533, 535 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 135, 139 L.Ed.2d 84 (1997). Therefore, the bankruptcy court correctly determined that Nevada law would be applied to determine whether Debtor's beneficial interest in the Pension Plan was exempt from the bankruptcy estate under 11 U.S.C. § 522(b).
 
 V. CHAPTER 11 TRUSTEE
 
 36
 Debtor contends that the bankruptcy court erred by granting Selnick's motion to appoint a Chapter 11 Trustee. We will reverse the bankruptcy court's decision to grant Selnick's motion to appoint a Chapter 11 Trustee only if the bankruptcy court abused it discretion. See In re Marvel Entertainment Group Inc., 140 F.3d 463, 470 (3d Cir.1998); Committee of Dalkon Shield Claimants v. A.H. Robins Co., 828 F.2d 239, 242 (4th Cir.1987); Kimm v. Cox, 130 F.2d 721, 733 (8th Cir.1942); cf. In re F.P. Newport Corp., 93 F.2d 630, 634 (9th Cir.1937). Upon a careful review of the record, we find that the bankruptcy court did not abuse its discretion in granting Selnick's motion for the appointment of a Chapter 11 Trustee.
 
 
 37
 Under the Bankruptcy Code, "[a]t any time after the commencement of the case but before confirmation of a plan, on request of a party in interest ... and after notice and a hearing, the court shall order the appointment of a trustee-(1) for cause ...; or (2) if such appointment is in the best interests of creditors." See 11 U.S.C. § 1104(a). The bankruptcy court granted Selnick's motion for the appointment of a trustee for cause under 11 U.S.C. § 1104(a)(1) and in the best interests of creditors under 11 U.S.C. § 1104(a)(2). Either one of these two, independent grounds was sufficient to justify granting Selnick's motion.
 
 
 38
 First, Debtor's prepetition transfer of the Pension Plan assets out of Pennsylvania, his personal flight to Nevada to avoid the jurisdiction of the Pennsylvania courts, and Debtor's control over the Pension Plan assets were good cause to appoint a trustee. Second, Debtor's history of manipulating the Pension Plan and his control over the Pension Plan's nominal trustee, Debtor's son, support the bankruptcy court's finding that it would be in the best interests of the creditors to have an independent and disinterested trustee to administer the estate and to pursue Debtor's unauthorized transfers of property. Therefore, the bankruptcy court did not abuse its discretion in granting Selnick's motion to appoint a Chapter 11 Trustee.
 
 
 39
 Debtor contends that the bankruptcy court lacked jurisdiction to grant Selnick's motion because Debtor's plan of reorganization had been confirmed. We disagree because, as we stated above, the district court effectively stayed the Confirmation Order pending resolution of the exclusion and exemption issues. Therefore, the bankruptcy court had jurisdiction to grant Selnick's motion under 11 U.S.C. § 1104(a). For the same reason, we also reject Debtor's arguments that (1) the Bankruptcy Code prohibits the postconfirmation appointment of a trustee, and (2) that the Confirmation Order, under the law of the case doctrine, implicitly determined that a Chapter 11 Trustee was not necessary. The Confirmation Order had neither one of these effects on the bankruptcy proceedings once the district court correctly determined that the plan could not be confirmed without first resolving the exclusion and exemption issues.
 
 
 40
 Debtor also contends that the bankruptcy court's order appointing the Chapter 11 Trustee was invalid because Debtor received insufficient notice and a hearing as required by the Bankruptcy Code. We disagree because the bankruptcy court complied with the notice and hearing requirements prescribed by the Code. Under the Bankruptcy Code, the bankruptcy court may take actions without an actual hearing if (1) a party receives notice of the proposed action, and (2) a hearing "is not requested timely by a party in interest." See 11 U.S.C. § 102(1)(B). The record shows that Debtor received notice of Selnick's motion. In fact, Debtor filed an opposition to that motion. However, Debtor never requested a hearing on that motion. Therefore, Debtor's argument that he was deprived of notice and a hearing is without merit.
 
 CONCLUSION
 
 41
 Based on the foregoing, the district court's order affirming in its entirety the bankruptcy court's November 1, 1996 order is affirmed, and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion.
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 On January 5, 1993, Debtor's bankruptcy was converted to Chapter 7. On February 12, 1993, Debtor's bankruptcy was reconverted to Chapter 11
 
 
 [2]
 In a separate order that is not before us on appeal, the bankruptcy court determined that up to $100,000 of Debtor's beneficial interest in the Pension Plan was exempt from the bankruptcy estate under Nevada law. However, the bankruptcy court noted that Debtor admitted to receiving over $1,000,000 from the Pension Plan from the petition date through March 18, 1997, and that Debtor had therefore exhausted much more than the exemption could possibly permit. The district court concluded that Debtor was not entitled to any further exemptions, and expressed its willingness to entertain a request for a return of the Pension Plan distributions received by Debtor that exceeded the allowable exemption
 
 
 [3]
 The restrictive endorsement stated, "Endorsement of this check constitutes a full release of all claims against Fred Lowenschuss, Laurance Lowenschuss, Edward Lowenschuss, Alan Lowenschuss & all claims against the Fred Lowenschuss Associates Pension Plan as set forth in the confirmed plan and order of the court in the reorganization case of Fred Lowenschuss # BNK92-31474."
 
 
 [4]
 We also note that Debtor did not appeal the bankruptcy court's order allowing Selnick to negotiate the checks notwithstanding the restrictive endorsement, and he cannot now collaterally attack that order in this appeal. See Sidney v. Zah, 718 F.2d 1453, 1457-58 (9th Cir.1983)
 
 
 [5]
 We note that the district court rejected this same argument in 1994 when it denied Debtor's motion to dismiss on grounds of equitable mootness Selnick's appeal of the Exclusion Order. We also note that the Pension Plan Trustee mischaracterizes the record by stating that Selnick failed to pursue a stay of the Confirmation Order. Selnick moved for a stay of the Confirmation Order, but the bankruptcy court denied that motion, stating that Selnick's remedy was by way of appeal, which Selnick diligently pursued
 
 
 [6]
 The Pension Plan Trustee reasoned that, because Selnick's appeal was equitably moot, the Confirmation Order must be reinstated, and therefore the Inclusion Order must be reversed. However, because we hold that Selnick's appeal is not equitably moot, the Pension Plan Trustee's arguments that are based on mootness fail. See also, In re Lowenschuss, 170 F.2d 923 (9th Cir.1999) (affirming order vacating Confirmation Order)
 
 
 [7]
 In addition, we have already held in a related appeal that the bankruptcy court erroneously confirmed the plan of reorganization because the plan purported to release claims against third-party nondebtors. See In re Lowenschuss, 67 F.3d 1394, 1401 (9th Cir.1995). In that appeal, we stated that the Bankruptcy Code "precludes bankruptcy courts from discharging the liabilities of non-debtors," see 11 U.S.C. § 524(e), and that a "bankruptcy court lacks the power to confirm plans of reorganization which do not comply with applicable provisions of the Bankruptcy Code." Id. Because Debtor's plan did not comply with 11 U.S.C. § 524(e), it could not have been confirmed
 
 
 [8]
 Debtor mischaracterizes the issue presented for review as the termination of an ERISA plan. However, we are merely confronted with the question of whether, on the petition date, Debtor could enforce under ERISA the transfer restriction contained in the Pension Plan. We have answered that question in the negative. Although 29 U.S.C. § 1341 is the exclusive means by which an ERISA plan may be terminated, that statute does not apply to non-ERISA plans such as Debtor's. Therefore, Debtor's argument that an ERISA plan may be terminated only pursuant to ERISA is inapposite
 
 
 [9]
 For this reason, Debtor's reliance on Patterson, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519, and In re Baker, 114 F.3d 636 (7th Cir.1997) is misplaced. In both Patterson and Baker, the debtors were not the sole owners of the companies sponsoring the pension plans, and therefore qualified as employee-participants in the pension plans
 
 
 [10]
 We also note that neither of Debtor's sons would have qualified as participants in the Pension Plan at any time between December 1, 1991 and November 30, 1992, the plan year in which Debtor filed his petition in bankruptcy. No contributions were made to the Pension Plan on behalf of Debtor's sons before December 1992, and neither of Debtor's sons worked the minimum number of hours required for participant status during that plan year
 
 
 [11]
 Although Debtor makes a similar argument, he failed to raise this argument in the bankruptcy court and failed to demonstrate exceptional circumstances for failing to raise this argument below. We therefore decline to address Debtor's argument for the first time on appeal. See International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985)
 
 
 [12]
 Section 8124(b) exempts "from attachment or execution on any judgment ... [a]ny retirement or annuity fund provided for under section 401(a), 403(a) and (b), 408 or 409 of the Internal Revenue Code ..., the appreciation thereon, the income therefrom and the benefits or annuity payable thereunder." 42 Pa. Cons.Stat. § 8124(b)(1)(ix). However, section 8124(b) does not allow exemption of (1) contributions made within one year of the petition date, (2) contributions in excess of $15,000 made within a one-year period, and (3) fraudulent conveyances. See id. § 8124(b)(1)(ix)(A)-(C)
 
 
 [13]
 We note that our decision today does not impose on bankruptcy debtors an unnecessary hardship because state exemption laws such as section 8124(b) that do not allow debtors to enforce the transfer restrictions contained in trusts, and therefore do not allow debtors to exclude from the bankruptcy estate their interests in those trusts, can be invoked pursuant to 11 U.S.C. § 522(b)(2) to exempt from the bankruptcy estate debtors' interests in trusts that otherwise satisfy those state laws
 
 
 [14]
 The Bankruptcy Code allows a debtor to "exempt from property of the estate ... any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place." 11 U.S.C. § 522(b)(2)(A)